IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>          v.<br><br>[1] WANDA VÁZQUEZ GARCED,<br>[2] JULIO M. HERRERA VELUTINI,<br>[3] MARK T. ROSSINI,<br>Defendants. | CRIMINAL NO. 22-342 (RAM) |

**THE UNITED STATES' RESPONSE TO DEFENDANT MARK T. ROSSINI'S RESPONSE TO ORDER TO SHOW CAUSE**[1]

**I.   Introduction**

Long before being indicted on federal bribery and conspiracy charges, defendants Wanda Vazquez Garced, Julio M. Herrera Velutini, and Mark T. Rossini had public profiles. Their indictment drew heavy press coverage locally, nationally, and internationally. The Court issued, *sua sponte*, a protective order ("the Order") enjoining government attorneys and agents, the defendants, court personnel, and potential witnesses from discussing with the public or media anything other than information entered unrestricted on the docket or discussed in open court. (ECF No. 27) The Court gave all parties an opportunity to voice any objection and or request a modification of the Order. Mr. Rossini challenges the Order, alleging that it does "more harm than good" in protecting his right to a fair trial, and that, in any event, it is redundant with this District's Local Rules.

---

[1] This response addresses only the arguments and legal issues raised by Mr. Rossini in his "Response to Order to Show Cause." (ECF NO. 62.) The United States reserves the right to address the arguments and issues raised in Ms. Vazquez's filing (ECF No. 88.) in a separate response given the different posture of the parties regarding the scope of the Protective Order.

While the United States shares the Court's concern regarding public statements about an ongoing criminal case, it has no objection to suspending the Order for the time being. The United States believes that there are less restrictive means of addressing inappropriate public comment about the case, including sanctions for attorneys who engage in extrajudicial statements violating the District's Local Rules, sanctions for any of the attorneys or defendants who release information produced in discovery in violation of the Court's protective order regarding discovery (ECF No. 31), granting of additional questions on voir dire or peremptory challenges to any party adversely affected by another party's public commentary, and, should inappropriate extrajudicial comments occur, a reinstatement of the Order.

**II.    Procedural Background**

On August 3, 2022, the United States indicted Ms. Vazquez, Mr. Herrera, and Mr. Rossini on charges of conspiracy, federal programs bribery, and honest services wire fraud. (ECF No. 3) All three defendants were and are publicly known figures. The indictment was covered by local, national, and international media.[2]

Five days after the indictment, this Court issued an Order to Show Cause which took notice of the significant media coverage and highlighted that the media attention had started weeks earlier. (ECF No. 19) The Court noted, specifically, that local media outlets reported

---

[2] Frances Robles, *Former Puerto Rico Governor Arrested on Corruption Charges*, N.Y. TIMES, August 4, 2022, https://www.nytimes.com/2022/08/04/us/puerto-rico-wanda-vasquez-arrest.html; Perry Stein, *FBI Arrest Former Puerto Rico Governor on Bribery Charges*, THE WASHINGTON POST, August 4, 2022, https://www.washingtonpost.com/national-security/2022/08/04/vzquez-garced-puerto-rico-bribery/; Rafy Rivera, Melissa Alonso, and Ray Sanchez, *Former Puerto Rico Governor Wanda Vázquez Charged With Bribery, US Justice Department Says*, CNN, August 4, 2022, https://www.cnn.com/2022/08/04/americas/puerto-rico-wanda-vazquez-governor-arrested/index.html; Eric de Leon, *Wanda Vázquez Se Declara No Culpable De Los Cargos En Su Contra*, EL VOCERO, August 8, 2022, https://www.elvocero.com/ley-y-orden/federal/wanda-v-zquez-se-declara-no-culpable-de-los-cargos-en-su-contra/article_1fe33c5c-1731-11ed-b96a-a3ca025f97a7.html.

on comments reputedly made by Ms. Vazquez in anticipation of her arrest. Several weeks later, on August 29, 2022, the United States filed an informative motion with the Court that Ms. Vazquez had posted on Twitter a message that included a quote stating, "The obvious injustice is there for all who are not blinded by prejudice to see." (ECF No. 52, p. 2) Ms. Vazquez responded that the Twitter message was not in reference to her case and that the United States had taken it out of context. (ECF No. 70, pp. 2-3)  It does not appear that any party to the litigation - not attorneys, witnesses, government agents, or defendants - have publicly commented in a way arguably attributable to this case since Ms. Vazquez's Twitter message. It does not appear that Mr. Velutini or Mr. Rossini have made any comments to the media about this case since being indicted.

On August 30, 2022, Mr. Rossini responded to the Court's Order to Show Cause, arguing that it "risks unconstitutionally preventing [him] from clarifying his defenses to the extent necessary to obtain a fair trial." (ECF No. 62, p.2)  On August 31, 2022, the Court ordered the United States to respond to Mr. Rossini.

### III.  Analysis

**A) Restrictions on speech in the context of criminal trials require a showing of high likelihood of prejudice.**

"It would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980). "The judicial system, and in particular our criminal justice courts, play a vital part in a democratic state, and the public has a legitimate interest in their operations." *Gentile v. State Bar of Nev.*, 50 U.S. 1030, 1034 (1991). The Supreme Court has addressed the media's potential to both protect and complicate the criminal justice process.  The Court has stated that "the press . . . guards against the

miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism," *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966), and that "[t]here is no question that speech critical of the existence of the state's power lies at the very center of the First Amendment." *Gentile*, 50 U.S. at 1034. This includes speech concerning criminal prosecutions. *Id.* (describing defense attorney's public critique of his client's prosecution as "political speech").

Yet the Court has also accorded trial courts "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 378, (1979). "On several occasions [the Supreme Court] has approved restriction on communications of trial participants where necessary to ensure a fair trial for the criminal defendant." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n. 18 (1984).

Judicial efforts to prevent prejudice generally fall into two categories - one remedial, the other, prophylactic. First, the trial court can employ a variety of techniques to limit the effect of the press coverage on the jurors, including postponing the trial until public attention subsides, extensive voir dire questioning, and clear jury instructions on the duty of jurors to decide the issues based on evidence presented in court. *See Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 564 (1976); *see also Newsgathering and the Law*, § 2.01 (Matthew Bender & Company, 2021).

Second, a court can, in appropriate cases, limit the speech of those participating before it. *See Gentile*, 501 U.S. at 1072; *Sheppard*, 384 U.S. at 359 (noting the trial court should have made an effort to control the release of information by police officers, witnesses, and counsel for both sides); *cf. Newsgathering and the Law*, § 2.01 (noting direct measures on the press such as gag orders to be "more problematic" and "difficult to square with the First Amendment").

But a court's ability to enjoin speech "is an area of considerable constitutional concern, and one that has major institutional implications for the federal judiciary." *Sindi v. El-Moslimany*, 896 F.3d 1, 29 (1st Cir. 2018). "The Supreme Court has directed judges to scrutinize injunctions restricting speech carefully and ensure that they are no broader than necessary to achieve [their] desired goals." *Sindi*, 896 F.3d at 29-30 (internal quotations omitted).

Judicial impositions restricting speech in the context of trials have been met with varying standards of appellate scrutiny. A survey of the case law from various federal circuits reveals that even in the case of restrictions on the speech of parties to the litigation (as opposed to the press), a showing generally must be made of a high risk of prejudice. *See Gentile*, 50 U.S. at 1074-75 (allowing regulation of speech by lawyers participating in the litigation where it risked "substantial likelihood of material prejudice," rather than the stricter "clear and present danger" showing for regulating the press); *United States v. Scarfo*, 263 F.3d 80, 94-95 (3d Cir. 2001) (reversing order challenged by a former attorney of defendant, who was not an active participant in the litigation, because the district court failed to show "substantial likelihood of material prejudice"); *United States v. Ford*, 830 F.2d 597-98 (6th Cir. 1987) (stating there was "no legitimate reasons for a lower standard" than "clear and present danger" for prior restraint of speech by "individuals, including defendants, seeking to express themselves outside of court than for the press"); *Clifford v. Trump*, 2018 U.S. Dist. LEXIS, at *11 (C.D.CA, July 31, 2018) (denying motion for restraining order against attorney who made 170 television appearances and publicized 439 tweets, and noting the First Amendment's "special protection" against prior restraint of speech); *United States v. Schock*, 2016 U.S. Dist. LEXIS 171016, at *3 (C.D. Il., Dec. 9, 2016) (describing the Seventh Circuit's standard allowing limitations on defendants' and their attorneys' free speech rights where their conduct

5

poses "a serious and imminent threat to the administration of justice.") (citing *Chase v. Robson*, 435 F.2d 1059, 1061 (7th Cir. 1970)). [3]

Appellate courts have invalidated district court orders restricting public comment, even when the orders only applied to participants in the litigation. *See, e.g., Gentile*, 50 U.S. at 1039 (finding that Nevada Supreme Court had "no basis" for finding that defense counsel's general comments at press conference following his client's indictment presented a substantial likelihood of material prejudice); *Sindi*, 896 F.3d at 33-35 (vacating an injunction prohibiting the defendant in a defamation suit from repeating six statements found to be defamatory at trial); *Ford*, 830 F.2d at 597-98 (vacating "gag order" issued *sua sponte* by district court restricting statements by defendant congressman about evidence and the government's motives in filing the indictment).

The First Circuit's vacating of a court order in *Sindi* illustrates the skepticism "gag orders" face on appellate review. In *Sindi*, the district court issued an order following a defamation trial which prohibited the defendants from making six specific statements which they had made previously and which the district court concluded were defamatory. 896 F.3d at 11-12. Despite its specificity as to the statements, and the jury verdict substantiating defamation, the restriction still swept too broadly for the First Circuit. The order's "cardinal

---

[3] Following *Gentile*, the "clear and present danger" standard may no longer be appropriate in cases of speech by attorneys related to proceedings before a court in which he or she is participating. *See Gentile*, 50 U.S. at 1074-75. *Gentile* approved a lower standard of "substantial likelihood of material prejudice," *id.*, but notably, *Gentile* 1) only addressed attorneys, not witnesses, and 2) concerned a State Bar of Nevada finding that Gentile violated its rules after the trial, not prior restraint of his speech. It is therefore unclear whether courts may still prohibit the speech of witnesses, or the future speech of participating lawyers, absent a showing of "clear and present danger." *See Clifford v. Trump*, 2018 U.S. Dist. LEXIS, at *10 (C.D.CA, July 31, 2018) (discussing *Gentile* and its interpretation by subsequent courts); *Graham v. Weber*, 2015 U.S. Dist. LEXIS 135343, at *10-20 (D.S.D., Oct. 5, 2015) (same).

vice" was that it did not make any allowance for contextual variance, prohibiting all commentary regardless of the speaker's purpose (such as an apology). *Id.* at 34-36.

### B) A protective order enjoining all individuals associated with this case from discussing any aspect of the case other than record facts is unnecessary, at this time.

The United States recognizes and shares the Court's concerns over pre-trial publicity. Nonetheless, it submits that the Court's order may be broader than is necessary at this time.

First, even applying the less restrictive "substantial likelihood of material prejudice" standard articulated in *Gentile* to attorneys commenting on matters for which they're attorneys of record, it's unlikely the facts here suffice to justify an order prohibiting *all discussion* of non-record facts by *all parties and witnesses* to *all members of the public*. Such restrictiveness would almost require assuming that any public commentary will create a high likelihood of prejudice, but "pretrial publicity--even pervasive, adverse publicity--does not inevitably lead to an unfair trial." *Neb. Press Ass'n*, 427 U.S. at 554. And although its facts are not on all fours with those in this case, the First Circuit in *Sindi* vacated an order gagging the repetition of specific defamatory statements by the party who had made them previously. By contrast, the protective order here extends to all parties and potential witnesses, on the basis of comments made weeks before the indictment.

Second, there exist other means of keeping the parties' extrajudicial comments in check. The Court can allow extensive voir dire questioning and provide explicit jury instructions that limit the jurors' focus to the evidence. Also, as Mr. Rossini notes, there are the District's Local Rules, which the parties violate at the peril of court sanction. These "constraints of professional responsibility and societal disapproval will act as sufficient safeguards in most cases." *Gentile*, 50 U.S. at 1058.

## IV.  Conclusion

The United States shares the Court's concern for extrajudicial statements by parties to this litigation and reserves the right to change its position if additional extrajudicial statements threaten to prejudice the litigation of the case.  The United States' attorneys and agents intend to continue to limit their public commentary to matters on the record.  But for the time being, the United States does not object to suspending the Order.  For these reasons, the United States respectfully requests that the Order be rescinded or suspended, to be re-issued at a later date, if necessary.

## Certificate of Service

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will notify all counsel of record.

**RESPECTFULLY SUBMITTED**, , this 7th day of September, 2022.

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S Department of Justice


*/s/ Ryan R. Crosswell*
Ryan R. Crosswell (G03502)
Nicholas W. Cannon
Trial Attorneys
Department of Justice
Public Integrity Section
1301 New York Ave., NW
10th Floor
Washington, D.C. 20530
(202) 616-5699
ryan.r.crosswell@usdoj.gov