IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

       **v.**

[2] JULIO HERRERA-VELUTINI AND [3] MARK
ROSSINI

    Defendants.

CRIMINAL NO. 22-342 (RAM)

## EMERGENCY MOTION TO ENJOIN THE GOVERNMENT FROM REVIEWING PRIVILEGED MATERIALS, FOR THE IMMEDIATE RETURN OF PRIVILEGED INFORMATION SEIZED BY THE GOVERNMENT, AND FOR AN EVIDENTIARY HEARING

TO THE HONORABLE COURT:

COMES NOW Mr. Julio Herrera Velutini ("Mr. Herrera-Velutini") and Mr. Mark Rossini ("Mr. Rossini"), by their undersigned attorneys, and pursuant to Fed. R. Crim.12 and 41(g) request an order: (a) enjoining the Government[1] from continuing its unilateral and procedurally flawed review of attorney-client and work product privileged electronic data, which was undertaken without any judicially authorized procedures; (b) holding an emergency evidentiary hearing at which the Government will be required to disclose the procedure it is now employing for the review of attorney-client and work product privileged electronic data and the extent to which it unlawfully accessed and exploited privileged information prior to Mr. Herrera-Velutini's and Mr. Rossini's indictments; for the return of attorney-client and work product privileged electronic data to Mr. Herrera-Velutini and Mr. Rossini; and (c) for an order barring the Government from using such privileged materials in any way, including at trial, in preparation for trial, or for any ongoing

---

[1] Government refers to any division of the Department of Justice ("DOJ"), including but not limited to, the U.S. Attorney's Office for the District of Puerto Rico ("USAO") and/or other federal or local law enforcement.

investigation. **Pursuant to L.Civ.R. 7(h) and L.Crim.R.112** oral argument is requested so that the Court can understand the **full extent of the Government's infringement of Mr. Herrera-Velutini's and Mr. Rossini's Sixth amendment rights.**

## I.      INTRODUCTION

What has become clear from only a partial review of the discovery provided to date is that the Government's prosecution is deeply flawed. Unbeknownst to Mr. Herrera-Velutini and Mr. Rossini, the Government only within the last several weeks advised them and their co-defendant that it has been in possession of their privileged data (attorney-client and work product) for well over two years and only now within the last month commenced a "filter team" review of this electronic data.[2] The volume of this data could reasonably dwarf the size of the discovery produced to date, as it contains seized data from approximately 32 electronic accounts and devices. It is not only surprising but profoundly concerning that this electronic data was not subjected to any filter team review prior to the indictment being returned in this matter. **Given the volume and nature of the data, it is reasonably certain that it contains Brady which should have been evaluated and considered as to whether charges were even warranted in the first instance.**

These materials were seized as a result of search warrants ("Warrants") directed to Mr. Herrera-Velutini's and Mr. Rossini's email accounts and iCloud backup of their phones. In the case of the email accounts and iCloud backups, the Warrants were issued to third party electronic communications providers and thus, Mr. Herrera-Velutini and Mr. Rossini did not receive any

---

[2] Mr. Herrera-Velutini and Mr. Rossini reserve the right to challenge the search warrants for overbreadth or on other grounds. The Government's untimely, lengthy, continuing, and arguably indiscriminate review of seized electronic materials, including those containing privileged information, is likely unreasonable under the circumstances.

notice of their existence until after their arraignment on the indictment and the Government's subsequent discovery communications.[3]

The Government was well aware and on notice from the very outset of its investigation that it would encounter a significant volume of privileged materials, since the defendants in this case are Wanda Vazquez Garced, an attorney and former Puerto Rico governor, Mr. Herrera-Velutini, an officer of multiple corporations, including banking entities in Puerto Rico and Europe, and Mark Rossini, a former FBI agent who later worked as a consultant and who according to countless witness statements provided in the discovery employed various law firms for legal advice and guidance. The very subject matter of the criminal investigation, which is highlighted over and over again in the indictment, involved regulatory audits of a financial institution in which attorneys on behalf of Mr. Herrera-Velutini and his corporations were engaged in regular and ongoing, sometimes daily, discussions with a government regulator – **a regulator which in fact worked at the direction of government investigators while it was directly interacting with Mr. Herrera-Velutini's legal counsel over the terms of the ongoing regulatory audits**.

In spite of this, the Government chose to indiscriminately seize the defendants' email accounts and phones without judicially reviewed and authorized taint procedures incorporated into the Warrants. The Government chose to then review this information unilaterally without involving Mr. Herrera-Velutini, Mr. Rossini or their counsel, or apparently without establishing any procedures to avoid viewing and exploiting privileged material contained in the data. Only after Mr. Rossini's and Mr. Herrera-Velutini's indictments and after the production of a portion of the discovery, the Government suddenly revealed that it is in possession of privileged material.

---

[3] The Government has advised the defendants of at least 32 warrants that were issued in this case. Mr. Herrera-Velutini's and Mr. Rossini's counsel are still identifying and reviewing all the warrants issued. The Government did not provide a list of the voluminous discovery thus far produced, which has made it more difficult for Mr. Herrera-Velutini's and Mr. Rossini's counsel to complete their review.

Instead of acknowledging its error and offering a remedy for it, the Government is using the existence of privileged materials it had already seized and presumably searched long ago as an excuse to withhold core Rule 16 discovery from Mr. Herrera-Velutini and Mr. Rossini unless they waive their attorney-client privilege.

As of now, Mr. Rossini and Mr. Herrera-Velutini have no way of ascertaining the exact number and nature of the privileged materials found in the seized data. Nor do they know who has viewed these privileged materials and if they were exploited by FBI agents and prosecutors assigned to the case. Moreover, the Government has refused to disclose the exact process and procedures being utilized to make the determination as to whether their data is privileged, further undermining their constitutional rights.

The Government also lacks the necessary background to be able to conduct unilaterally a complex privilege review of this nature where multiple lawyers, law firms and in-house counsel provided guidance and work product in defense of what Mr. Herrera-Velutini and Mr. Rossini contend became a prosecution-directed regulatory audit process.

**The improper use of the regulatory agency to advance a law enforcement investigation may have been compounded by the Prosecution's team access to privileged communications concerning the regulatory agency to direct and advance the regulatory agency's actions in furtherance of the investigation and prosecution of this case**. The Government should not without Court-authorized "guard rails" be allowed to continue its haphazard and constitutionally deficient review of Mr. Herrera-Velutini's and Mr. Rossini's privileged data. Lastly, if the Prosecution team accessed privileged information, which Mr. Herrera-Velutini and Mr. Rossini have a right to know, recusal from participation in this case is mandated.

## II.    RELEVANT BACKGROUND

### A.    Search Warrants

The Warrants in this case sought to indiscriminately search data, including privileged data, belonging to Mr. Herrera-Velutini and Mr. Rossini. The Warrants said nothing about the seizure of privileged information, nor did they describe any post-seizure measures for screening the case agents and assigned prosecutors. For example, in December 2020, pursuant to an electronic communications search warrant, Yahoo, Inc. produced electronic account information belonging to Mr. Herrera-Velutini. *See* Ex. A.

Again, on March 26, 2021, the court issued a search warrant directed to Apple, Inc. seeking all files, electronic communications, and other documents belonging to the defendants. The March 26, 2021 search warrant once again, lacked any instructions as to a "filter team" or other instructions to protect Mr. Herrera-Velutini's and Mr. Rossini's privileged information. *See, e.g.*, Ex. B. Below is an excerpt of the instruction as to how the search warrant would be executed.

> III.    Government procedures for warrant execution
>
> The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.
>
> Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court.

Thus far, a review of discovery produced has not identified any court sanctioned use of filter teams to guard against the review and exploitation of privileged data in any of the other

search warrants. This is so even though, as the Government knows from its years-long investigation of Mr. Herrera-Velutini and as acknowledged in the Warrants, Mr. Herrera-Velutini is the CEO of a bank that has been subject to intensive (and abusive) regulatory scrutiny by Puerto Rican authorities, and he has retained numerous attorneys to respond to that scrutiny.

### B.    Communications with the Government

On October 13[4] and 21, 2022, the Government first informed Mr. Herrera-Velutini, Mr. Rossini, and the other defendant that discovery was delayed because potentially privileged materials were now being reviewed by the Government through a "filter team." *See* Ex. C. Recognizing that its belated and unsanctioned initiation of filter team review would cause significant discovery delays, the Government sought to induce the various defendants to waive their attorney-client privilege amongst themselves as a condition of receiving earlier production of material that already should have been produced. On October 28, the defendants wrote a letter objecting to the Government's review of privileged information, objecting to the Government's request that defendants waive their attorney-client privilege, and objecting to the Government's delay in producing discovery that has been in its possession for more than a year. *See* Ex. D.

On November 4, 2022, the Government curtly rejected defendants' demand for it to immediately cease its review of privileged materials. Despite claiming correctness as to the procedures employed, the Government proposed the following additional measures (with no room for negotiation):

> "1) allow documents segregated to the filter team as a result of its broad
> keyword searches to remain on the filter side, unless there is no attorney involved
> in the communication (in the case of false keyword hits); and

---

[4] The Government verbally communicated the information on October 13.

2) in the case of communications between an attorney and a defendant in which the filter attorney believes a) that the document is not privileged or b) that privilege was waived, consult with the defendant's current counsel before releasing the communication to prosecution team." *See* Ex. E.[5]

This one-sided approach, in which the Government maintains absolute control over the review of privileged information based on its own undisclosed criteria, is not acceptable to Mr. Herrera-Velutini and Mr. Rossini since it provides no meaningful safeguards to protect their constitutional rights. Under this proposed approach, the Government alone will determine what materials are potentially privileged (based on undisclosed "broad keyword searches"), will only segregate materials if an attorney is copied (regardless of whether the material could constitute attorney-work product), and then will make a preliminary assessment as to whether the document is not privileged, or a privilege has been waived. Mr. Herrera-Velutini and Mr. Rossini will only have seven days thereafter to object or potentially waive any privilege claim.

Moreover, a real danger exists that the investigative and prosecution team already have accessed and reviewed the defendants' privileged information, causing them serious harm.[6] The Government has been in possession of many of these materials for over a year and it presumably has searched the materials in furtherance of the investigation before it belatedly initiated filter team procedures. Continuing to display its disregard for privilege protections, the Government has not even asked Mr. Herrera-Velutini or Mr. Rossini for a list of lawyers engaged in providing legal

---

[5] The parties have tried to resolve these issues without the court's intervention. However, it is evident that the Government will not reach an agreement to stop its review and since the harm to Mr. Herrera-Velutini and Mr. Rossini is ongoing, the Court should intervene now and order the Government to stop its review at least until the court has the opportunity to rule on these issues.

[6] The Affidavits to support of the some of the search warrants seem to indicate that this might have been the case since there are references to communications relating to meetings with attorneys. Further, communications with Frances Diaz, another corporate officer and an attorney who is repeatedly mentioned in the Affidavits, may also be privileged.

advice and work product during the pertinent time periods of the allegations in this case. For this reason, an emergency hearing should be scheduled as soon as possible, in which the Government should fully disclose the methods it has implemented to review the discovery obtained as a result of the Warrants, what materials have been given to the investigation and prosecution team, who has seen potentially privileged materials and how they were used, and how the privilege review will be conducted going forward. Adding a further layer of urgency, Mr. Herrera-Velutini's and Mr. Rossini's right to a speedy trial is also in jeopardy, since it has been months since they have been indicted and they have yet to receive complete discovery, including the returns of their own email accounts and iCloud backups.

### III.      LEGAL STANDARD

Rule 41(g) of the Federal Rules of Criminal Procedure provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return…The court must receive evidence on any factual issue necessary to decide the motion." Fed. R. Crim. P. 41(g). A defendant may move for the return of privileged materials, "invoking Rule 41(g) of the Federal Rules of Criminal Procedure." *United States v. Carter*, 995 F.3d 1222, 1224 (10th Cir. 2021)(discussing a district court case in which the judge ordered an investigation after receiving a Rule 41 (g) motion requesting the return of privileged attorney-client communications, ultimately dismissed the case against the remaining defendant, and "made statements adverse to the USAO and found contempt based partly on a failure to preserve evidence."). *See also, Trump v. United States*, No. 22-81294-CIV-CANN, at *5-7 (S.D. Fla. Sep. 5, 2022)(invoking Rule 41(g) and injunctive relief to seek relief from the government's use of a filter team).[7]

---

[7] The Eleventh Circuit partially stayed the district court order in *Trump v. United States*, No. 22-13005, 2022 WL 4366684 (11th Cir. Sept. 21, 2022) as it pertained to 100 documents with classified markings. ("The district court

## IV.    ARGUMENTS

### A.    The Court should order the Government to immediately cease its review of potentially privileged documents, and to return all documents to Mr. Herrera-Velutini and Mr. Rossini for them to conduct an initial review.

The U.S. Constitution protects the right to effective assistance of counsel, and said right is injured when the Government is allowed to seize legally protected communications to be potentially used against the privilege holders. *See* U.S. Const. amend. VI; *see also United States v. Neill*, 952 F. Supp. 834, 839 (D.D.C. 1997)(the court explaining that "[i]t matters little whether the intrusion occurred prior to the initiation of formal adversary proceedings… because the right to a fair trial could be crippled by government interference with the attorney-client privilege long before the formal commencement of a criminal proceeding.").

As the Supreme Court has recognized, "[t]he attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Such privilege attaches not only to attorney-client communications but can also attach to documents sent or created during this relationship at the direction of counsel. For example, a client's act of producing documents is itself a "testimonial communication" because it might entail implicit statements, *United States v. Hubbell*, 530 U.S. 27, 36 n.19 (2000), including that "the papers existed, were in their possession or control, and were authentic." *Id.* at 36 (2000).

### i.    The Government's filter team approach affords no meaningful protections.

As an initial matter, the filter team that the Government seeks to impose unilaterally on defendants in this case, without any judicial sanction or supervision, simply does not have sufficient background and information to make privilege determinations, which often turns on

---

order is STAYED to the extent it enjoins the government's use of the classified documents and requires the government to submit the classified documents to the special master for review.").

highly factual knowledge. *See In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 71 (1st Cir. 2011) ("Determining whether documents are privileged demands a highly fact-specific analysis —one that most often requires the party seeking to validate a claim of privilege to do so document by document."). As courts routinely recognize, determinations about whether a particular communication or document is privileged are highly fact specific; this is more so when the communications belong to a governor, an officer of multiple corporations, including one under abusive and long-running regulatory scrutiny, and a management consultant who assisted and advised his client in various matters.

A filter team of agents and lawyers unfamiliar with the materials, Puerto Rico law, the Spanish language, and the background as to what these materials reflect and how they were created simply cannot make reasonable privilege determinations. *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (noting that "taint teams present inevitable, and reasonably foreseeable, risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors"); *U.S. v. Gallego*, No. CR-18-01537-001-TUC-RM (BPV), 2018 WL 4257967, at *4-*6 (D. Ariz. Sept. 6, 2018) ("The Government's taint team may have a more restrictive view of privilege than the defense . . . [and] the Government's conflicting interests in both preserving privilege and pursuing the investigation present inherent risks.")(internal citations omitted).

Under the Government's proposed review process, Mr. Herrera-Velutini's and Mr. Rossini's attorneys would only be able to assert privilege over documents that the filter team has identified as potentially privileged and the filter team, self-admittedly, has a narrower view of privilege than Mr. Herrera-Velutini's and Mr. Rossini's attorneys. The Government only contemplates designating as privileged communications in which an attorney is copied, even if the materials could be subject to other privileges such as the work product doctrine.

Moreover, communications between non-lawyers may also be privileged in the corporate context when these communications concern or references advice of counsel. *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995)(explaining that "the privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation."); *Sterling Merchandising, Inc. v. Nestle*, Civil No. 06-1015(SEC), at *3 (D.P.R. Aug. 5, 2008) ("Although Sterling is correct in that communications, not facts, are protected under the privilege, it is precisely the communication of the legal advice made by NPR's counsel from one NPR employee to another which we hold privileged today."); *Santrade, Ltd. v. General Elec. Co*., 150 F.R.D. 539, 545 (E.D.N.C. 1993) ("A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds. First, in instances where the client is a corporation, documents subject to the privilege may be transmitted between non-attorneys to relay information requested by attorneys. Second, documents subject to the privilege may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately.")(internal citations omitted).

Thus, the Government's broad search approach has and will likely continue to eviscerate Mr. Herrera-Velutini's and Mr. Rossini's privilege.

In addition, empowering the filter team to flag materials that may be privileged rather than allowing defendants' attorneys to conduct this review is insufficient because an attorney is entitled to raise such a privilege on behalf of their client in the first instance and a court cannot delegate privilege determinations to an agency. *In re: Search Warrant Issued June 13, 2019*, 942 F.3d 159,176 (determining that a court cannot "delegate its judicial power and related functions to the executive branch, especially when the executive branch is an interested party in the pending

dispute" and noting that a lawyer is entitled to raise a claim of privilege on behalf of his client) (citation omitted). To allow the filter team to impede upon the attorney-client relationship in this way is offensive to the integrity of the justice system, and thus public policy favors a preliminary injunction. *Id.* at 183.

Moreover, the make-up of the filter team—which likely includes other members of the USAO-PR, the Public Integrity Unit for DOJ and PR agencies that conducted the investigation — creates an inherent conflict of interest. It is not possible for members of the same agency and offices that are involved in the investigation to entirely separate themselves from the prosecution. *See Trump*, supra, at *15 (S.D. Fla. Sep. 5, 2022) ("Concerns about the perception of fair process are heightened where, as here, the Privilege Review Team and the Investigation Team contain members from the same section within the same DOJ division, even if separated for direct-reporting purposes on this specific matter. [P]rosecutors have a responsibility to not only see that justice is done, but to also ensure that justice appears to be done.") (internal citations omitted).

> **B. A hearing should be conducted to examine the Government's prior and ongoing review of privileged materials and to either approve the Government's filter team and accompanying search protocol or to designate other means of conducting the review.**

A tacit acceptance of the Government's "filter team," which the Government appears to have established only belatedly and without seeking judicial approval for use of the team in the Warrants, undermines the fundamental principles of the attorney-client and work product privileges. *In re: Search Warrant Issued June 13, 2019,* 942 F.3d at 179. The Government seized potentially privileged documents, and it refuses to say whether it viewed and exploited them in furtherance of the investigation, nor whether the case agents or prosecutors currently assigned to the case have knowledge of the content of privileged communications. The members of the

prosecution team should be ordered to do so in an evidentiary hearing to determine whether the prosecution has been tainted by their knowledge and potential use of privileged information.

Unless stopped and placed under judicial supervision, the Government will continue to review potentially privileged documents using potentially tainted reviewers and unidentified means, further injuring Mr. Herrera-Velutini and Mr. Rossini. "An adverse party's review of privileged materials seriously injures the privilege holder." *Id.* at 175. Review by the Government of privileged material "cannot be undone" and such harm is irreparable. *Id.*

In *In re: Search Warrant Issued June 13, 2019*, the Fourth Circuit matter, IRS agents had applied for a search warrant in order to conduct a search of a law firm that represented an individual that the IRS had been investigating. 942 F.3d at 165. In granting the search warrant, the district court also authorized the use of a filter team to review documents seized by the government, as well as the proposed protocol. *Id.* The use of the filter team and the proposed protocol had both been proposed to the district court *ex parte*. *Id.* The proposed protocol "defined the membership of the Filter Team and established the process for its review of the materials to be thereafter seized from the Law Firm." *Id.* The team "included lawyers from the United States Attorney's Office in Maryland's Greenbelt Division" as well as non-lawyer individuals. *Id.*

Pursuant to the Filter Protocol, the Filter Team members were not involved in the investigations of Lawyer A and Client A (apart from being Filter Team members). The agents and prosecutors conducting the investigations of Lawyer A and Client A (the "Prosecution Team") were excluded from the Filter Team. In contrast to the Filter Team AUSAs who were assigned to the Greenbelt office, the Prosecution Team lawyers were assigned to the United States Attorney's Baltimore office. *Id.*

The process for reviewing the documents seized included, among other things, reviewing documents and separating those the filter team identified as privileged. *Id.* at 165-67. The government executed a search warrant on a law firm and seized a large amount of client materials not relevant to the underlying litigation. *Id.* at 172. The law firm moved the district court for injunctive relief, seeking to stop the review of the seized documents and challenging the government's use of the filter team and protocol. The district court denied the law firm's motion but the Fourth Circuit reversed, explaining that "use of the Filter Team is improper for several reasons, including that, inter alia, the Team's creation inappropriately assigned judicial functions to the executive branch, the Team was approved in *ex parte* proceedings prior to the search and seizures, and the use of the Team contravenes foundational principles that protect attorney-client relationships." *Id.* at 164.

As the Fourth Circuit astutely noted, the district court "should have conducted adversarial proceedings on whether to authorize the Filter Team and the Filter Protocol." *Id.* at 178. Approving a "filter team" or review protocol without first conducting an adversarial hearing undermines the fundamental principles of the attorney-client privilege. *Id.* at 176, 180-81; *see also Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 961 (3d Cir. 1984) (granting preliminary injunction and ordering the return of files seized by the government during the execution of a search warrant where the government's actions "completely disregarded any concept of the attorney-client privilege" and made "no attempt to limit the seizure to files of clients" with information relevant to the investigation). An adversarial process allows the Court to become familiar with the contents of the seized material and make an informed decision as to whether a "filter team" or review protocol is indeed appropriate. *In re: Search Warrant Issued June 13, 2019*, 942 F.3d at 178-79 ("the magistrate judge should have declined the government's *ex parte* invitation with respect to

the Filter Team, and the judge should have conducted adversarial proceedings on whether to authorize the Filter Team and the Filter Protocol" so as to be "fully informed of the relevant background" and understand "the nature of the seized material" prior to granting the government's request) (emphasis in original).

A similar procedure was implemented in *Cohen v. United States*, No. 1:18-mj-03161, 2018 WL 1772209 (S.D.N.Y. Apr. 13, 2018). There, after federal agents executed a search warrant of the offices of Michael Cohen, and seized privileged materials, the "district court conducted adversarial proceedings concerning the prosecutor's proposed use of a filter team" prior to any review of the seized materials. *In re: Search Warrant Issued June 13, 2019,* 942 F.3d at 179. Through the hearing, the district court had the opportunity to understand the nature of the seized materials and make an informed decision about whether the government's proposed protocol could indeed serve "to protect any privileged materials that may have been seized." *Cohen v. United States*, No. 1:18-mj-03161, 2018 WL 1772209, at *1 (S.D.N.Y. Apr. 13, 2018).

It should be noted that courts have disapproved of filter teams because they create an appearance of unfairness and are potentially harmful to the integrity of the judicial system. *U.S. v. Gallego*, *supra*, at *4-*6 (determining that the use of filter teams is inherently unfair and thus a "special master" should be appointed to review potentially privileged materials); *Neill*, 952 F. Supp. at 841 n. 14 (determining that the use of a filter team creates an "appearance of unfairness"). Further, the use of a filter team contravenes public interest for many reasons.

Allowing Government agents alone to ascertain which documents are within the scope of the warrant and are non-privileged is to leave the "government's fox" in charge of defendants' "henhouse." *See In re: Search Warrant Issued June 13, 2019*, 942 F.3d at 182. Even if the court believes that filter teams are a proper means to review privileged information, the court should still

conduct a hearing to understand the specific facts and circumstances of this particular privilege review and whether it has sufficiently employed measures that protect Mr. Herrera-Velutini's and Mr. Rossini's privileged communications, particularly where, as here, the Government appears to have never sought or obtained judicial approval for use of such procedures. *Trump*, supra, at *14 (finding that the Government's filter team was deficient, despite the Government claims that it was proper). In *Trump*, after reviewing the filter team's report, the court found that "the "Investigative Team already has been exposed to potentially privileged material." ). If the Government was unable to properly filter out privileged information in a warrant concerning the former President of the United States, there is no reason to believe or assume that it has properly handled Mr. Herrera-Velutini's and Mr. Rossini's privileged information.

Further, Mr. Herrera-Velutini has a right to know if privileged materials were viewed and by whom during the investigation; whether any use was made of them by the prosecution team in furtherance of the investigation; and whether any current members of the prosecution team have viewed privileged communications. If that is the case, Mr. Herrera-Velutini and Mr. Rossini are entitled to the immediate recusal of the prosecution team. *In re Sealed Search Warrant*, No. 20-MJ-03278-O'SULLIVAN, at *18 (S.D. Fla. Sep. 23, 2020) ("The government's concerns regarding delay would be exacerbated if privileged materials are disclosed to the investigative/prosecution team and the movants later seek to disqualify the investigative/prosecution team.").

**C.    The court should appoint an independent special commissioner or, consistent with Rule 41(g), order the Government to return all potentially privileged materials, so that Mr. Herrera-Velutini's and Mr. Rossini's counsel may conduct the first review as to privilege.**

There are ways in which the risks inherent to such a review can be minimized. These include appointing a Special Master to oversee the review. As an alternative, and consistent with Rule 41(g), Mr. Herrera-Velutini and Mr. Rossini propose that a copy of the seized materials be

returned, so that defendants can perform a search of privileged items not covered by the Warrants and produce a log to the Government for its review. Any disputes would be submitted to a neutral party, such as the Court or a Special Master.

Under this proposal, the Government should return an electronic copy of the documents seized to Mr. Herrera-Velutini and Mr. Rossini for their review. After the return of the documents, Mr. Herrera-Velutini's and Mr. Rossini's counsel should be allowed a reasonable time in which to identify privileged documents. The Government should be precluded from reviewing the seized documents while this review is ongoing. Once the documents are reviewed, Mr. Herrera-Velutini's and Mr. Rossini's counsel should submit a log. The Government should then be ordered to return all copies of privileged documents.[8] To the extent that the Government challenges any assertion from the defendants' counsel, the documents may be reviewed by the Court, or a Special Master, in camera, and the Court may then adjudicate the existence of valid legal privileges.

This method allows Mr. Herrera-Velutini's and Mr. Rossini's counsel to protect their rights while protecting the Government's interest since a third-party neutral will adjudicate any controversies.

As stated, while this controversy is being adjudicated, the Court should immediately enjoin the Government from performing any further review of the seized documents.

**D.      The court should also grant the other proposed remedies.**

Mr. Herrera-Velutini and Mr. Rossini have serious concerns about the Government's possession of privileged materials and the use of said materials in the investigation that led to their indictment, as well as in any ongoing investigations, in preparation for trial, or at trial. Without

---

[8] *See id.* (in which a Florida court permitted the business to conduct the first review, prepare a privilege log, and submit any controversies to an in-camera review).

waiving any additional arguments, and to preserve their objections to the ongoing review of materials that are outside the Warrants, Mr. Herrera-Velutini and Mr. Rossini submit that any privileged materials should be suppressed and immediately returned to Mr. Herrera-Velutini and Mr. Rossini. The Government has no right to possess this information; it was prohibited from using it to develop the case against Mr. Herrera-Velutini and Mr. Rossini; and it cannot now use it to aid in the current case or any other investigation that may be underway. Moreover, the Government has had more than enough time to designate any materials that were within the scope of the Warrants (nearly two years in some cases) and return all materials not within its scope. There is no excuse for the Government to keep Mr. Herrera-Velutini's and Mr. Rossini's privileged information in its possession.

## V.    CONCLUSION

Constitutional protections, including those afforded by the Fourth and Sixth Amendments, are at stake here. Privileged materials were taken and potentially reviewed by the prosecution team without any judicial supervision and without allowing Mr. Herrera-Velutini and Mr. Rossini to have any say on how it was to be reviewed. Courts, reviewing similar issues, have concluded that such unilateral reviews should not be allowed, since they do not afford any meaningful protection to the privilege holders like Mr. Herrera-Velutini and Mr. Rossini. As a result, the Court should grant Mr. Herrera-Velutini's and Mr. Rossini's motion to return their property and/or to prohibit law enforcement from reviewing the documents seized until an appropriate procedure is established. The Court further should hold an evidentiary hearing at which the Government should be ordered to disclose who accessed and reviewed potentially privileged material prior to the recent commencement of a taint review, and the Court should fashion remedies for prior and current privilege violations that are appropriate in the circumstances.

WHEREFORE, Mr. Herrera-Velutini and Mr. Rossini respectfully request that this Court (1) order the Government to immediately cease reviewing the potentially privileged items seized (electronic communications) at least until the court has an opportunity to be briefed on the issues; (2) order the Government to disclose the specific procedures it is using regarding the review of potentially privileged materials and hold an emergency hearing to discuss the Government's prior and ongoing review of privileged information; (3) appoint a Special Master to conduct the review of attorney-client privileged information and items not covered by the Warrants; (4) in the alternative, allow the defendants to conduct this review; (5) order the return of privileged materials it has seized; and (6) order the Government to stop using the privileged information seized for any purpose, including at trial or for trial preparations.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 11th day of November 2022.

*Attorneys for Julio Herrera-Velutini*

| **The LS Law Firm** | **DLA Piper (Puerto Rico) LLC** |
|---|---|
| One Biscayne Tower, Suite 2530 | 500 Calle de la Tanca Ste. 401 |
| 2 South Biscayne Blvd. | San Juan, PR 00901-1969 |
| Miami, Florida 33131 | Tel. 787 281-8100 |
| Telephone: (305) 503-5503 | |
| Facsimile: (305) 503-6801 | |
| | |
| */s/ Lilly Ann Sanchez* | */s/ Sonia Torres-Pabón* |
| Lilly Ann Sanchez, Esq. | Sonia Torres-Pabón |
| Fla. Bar No. 195677 | USDCPR No 209310 |
| Email: lsanchez@thelsfirm.com | Email: Sonia.torres@us.dlapiper.com |

**Zweiback Fiset & Zalduendo LLP**
523 W. 6th Street, Suite 516
Los Angeles, CA 90014
Tel. 213-266-5170

*/s/ Michael Zweiback*
Michael Zweiback
CA SBN 143549
Email: michael.zweiback@zfzlaw.com

*Attorney for Mark Rossini*

**LIZARRIBAR-MASINI LAW OFFICE, LLC**
G-14 O'Neill Street, Suite A
Hato Rey, PR 00918
Tel. (787) 525-5462

/s/ Lydia Lizarribar
USDC-PR No. 124301
Email: lizarribarlaw@gmail.com

### CERTIFICATE OF SERVICE

It is hereby certified that on this date the present motion is filed with the Clerk of the Court through the CM/ECF electronic system which will notify and provide copies to all parties of record.

*/s/ Sonia I. Torres-Pabón*
SONIA I. TORRES-PABÓN