**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br><br>         **v.**<br><br>**[1] WANDA VÁZQUEZ GARCED,**<br>**[2] JULIO M. HERRERA VELUTINI,**<br>**[3] MARK T. ROSSINI,**<br>**Defendants.** | **CRIMINAL NO. 22-342 (RAM)** |

**THE UNITED STATES' RESPONSE TO DEFENDANT WANDA VAZQUEZ'S
MOTION TO DISMISS (ECF NO. 193)[1]**

## I.     INTRODUCTION

Counts One, Three, and Four of the Indictment charge Defendant Wanda Vazquez Garced ("Vazquez") with violations of 18 U.S.C. §§ 371, 666(a)(1)(B), 1346, and 1343 related to a bribery scheme while she was governor of Puerto Rico. All three counts are pleaded properly in compliance with Rule 7 of the Federal Rules of Criminal Procedure.  Further, the allegations of the Indictment set forth an explicit quid pro quo which meets the standard set forth in *McCormick v. United States*, 500 U.S. 257 (1991) and its progeny.

Vazquez motions for the Court to dismiss Counts One, Three, and Four of the Indictment. Julio Herrera Velutini ("Herrera") and Mark T. Rossini join her motion.  Vazquez's Motion is premised on the argument that bribery based on political contributions must be expressly stated between the parties.  But every Circuit court to address this issue, including the First Circuit, has held that, at most, political contribution-based bribes need to have explicit terms, but they do not need to be expressly agreed upon.  Vazquez's argument not only disregards controlling precedent

---

[1] Vazquez's Motion to Dismiss is joined by Defendants Julio Herrera Velutini and Mark T. Rossini (ECF Nos. 198 and 199).

on federal bribery charges, but also a fundamental tenet of criminal law that allows the use of circumstantial evidence to prove intent.  Because the Indictment alleges an explicit quid pro quo – political funding in exchange for a change of leadership at the Office of the Commissioner for Financial Institutions ("OCIF") – Vazquez's Motion should be denied.  Moreover, even if the Court were to hold that the terms of the bribery scheme must be proven and alleged as expressly stated, the Indictment is nonetheless sufficient because it <u>does</u> allege the bribe's terms were expressly stated.

The rest of Vazquez's Motion questions and disputes the Indictment's factual allegations. Vazquez's factual challenges are not an appropriate basis for a motion to dismiss.  If Vazquez wants to challenge the Government's allegations, she must do so before a jury.  Because the Indictment is properly pleaded and because arguments regarding the sufficiency of the evidence are to be determined at trial, the United States of America respectfully requests that Vazquez's Motion to Dismiss (ECF No. 193) be denied.

## II.      <u>ARGUMENT</u>

### A.      The Indictment's Bribery Counts Sufficiently Allege the Offenses Charged

A motion to dismiss must "attack the facial validity of the indictment" and not merely challenge[] the government's substantive case." *United States v. Ngige*, 780 F3d 497, 502 (1st Cir. 2015). "When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true, mindful that 'the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." *Id.* (quoting *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012)).

Federal Rule of Criminal Procedure 7(c)(1)7(c)(1) requires that the indictment be "a plain,

concise and definite written statement of the essential facts constituting the offense charged."  The Supreme Court has stated that an indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974).

"When grading an indictment's sufficiency, we look to see whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." *United States v. Guerrier*, 669 F.3d 1, 3 (1st Cir. 2011).  "Setting forth the words of the statute itself is generally sufficient if those words set forth all of the elements of the offense without any uncertainty or ambiguity." *United States v. Berk*, 652 F.3d 132, 138 (1st Cir. 2011) (internal citations and quotations omitted). "[A] technically sufficient indictment handed down by a duly empaneled grand jury 'is enough to call for a trial of the charge on the merits.'" *Id.* (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)). Fed. R. Crim. P. 7(c)(1) does not require the government to enumerate every piece of evidence it intends to utilize at trial.  *United States v. Cameron*, 699 F.3d 621, 635 (1st Cir. 2012) (holding that indictment did not need to specify the child pornography image forming the basis for each count).  Accordingly, "[c]ourts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." *Guerrier*, 669 F.3d at 4.

The Indictment goes well beyond Fed. R. Crim. P. 7(c)(1)'s minimal pleading requirements for each count in the Indictment and specifically for Counts One, Three, and Four, challenged by Vazquez in her motion to dismiss.   The Indictment includes elements of the offenses, and not only

the essential facts constituting the charge, but dozens of factual allegations detailing the offense conduct. It leaves no question as to the nature of the offenses alleged against Vazquez.

### 1. Count One is Sufficiently Alleged

Count One alleges that Vazquez committed conspiracy, in violation of 18 U.S.C. § 371. The elements of conspiracy are 1) that the agreement specified in the indictment . . . existed between at least two people to commit a particular federal offense; 2) that the defendants willfully joined in the agreement; and 3) that one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy. Pattern Criminal Jury Instructions for the District Courts of the First Circuit, § 4.18.371.

The Indictment alleges all of the elements of conspiracy. For the Vazquez prong of the conspiracy, it alleges the defendants "knowingly and willfully conspire[d] and agree[d] together and with each other and others" (Element #1) to "solicit" "thousands of dollars in funding in support of Vazquez's election campaign," "intending to be influenced and rewarded" "in connection with any business, transaction, and series of transactions of the Commonwealth of Puerto Rico valued at $5,000 or more, to wit: the termination of OCIF Commissioner A and the appointment OCIF Commissioner B," in violation of 18 U.S.C. §§ 666(a)(2) and (a)(1)(B) (Element #2) (Indictment, ECF No. 3, p. 9). It then lists 85 separate overt acts (Element #3) (*Id.*, pp. 11-27).

### 2. Count Three is Sufficiently Alleged

The Indictment also sufficiently pleads a crime in Count Three. Count Three charges Vazquez with federal program bribery, in violation of 18 U.S.C. § 666(a)(1)(B). The elements are 1) that Vazquez was the agent of a State or local government; 2) that she corruptly solicited or demanded, or accepted and agreed to accept, anything of value from any person; 3) that she acted

4

with the intent to be influenced or rewarded in connection with any business, transaction, or series of transactions of such government or agency involving anything of value of $5,000 or more; and 4) that the government or agency received, in any one year period, benefits in excess of $10,000 in federal funding. *See* Jury Instructions in *United States v. Carrasco-Castillo*, 14-CR-423 (FAB), ECF No. 380 (D.P.R., Dec.10, 2019); *United States v. Angel Perez-Otero*, 21-CR-474 (ADC), ECF No. 101, p. 23 (D.P.R., Mar. 22, 2023).

Count Three alleges that between December 2019 and May 2020, Vazquez, "the Governor and an agent of the Commonwealth of Puerto Rico" (Element #1) "did corruptly solicit, demand, accept, and agree to accept for her own benefit things of value, that is thousands of dollars in funding in support of [her] election campaign (Element #2), intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of the Commonwealth of Puerto Rico valued at $5,000.00 or more, to wit: the termination of OCIF Commissioner A and the appointment OCIF Commissioner B" (Element #3) (Indictment, p. 28). It further alleges that in both 2019 and 2020, Puerto Rico received more than $10,000 in benefits from the United States government under federal programs (Element #4) (*Id.*).

### 3.  *Count Four is Sufficiently Alleged*

Finally, Count Four charges Vazquez with honest services wire fraud, in violation of 18 U.S.C. §§ 1346 and 1343.  The elements are 1) that Vazquez knowingly and voluntarily participated in a scheme to defraud and deprive the people of Puerto Rico of honest services from a public official; 2) that she did so with intent to defraud; 3) that the scheme to defraud involved a material false representation or concealment of fact; and 4) that she used or caused to be used wire communications in interstate commerce in furtherance of, or in an attempt to carry out, some essential step in the scheme.  *See* Jury Instructions in *United States v. Hernandez-Perez, et al.*, 15-

CR-739 (PAD), ECF No. 821 (D.P.R., Oct. 7, 2016), *reversed on other grounds*, 994 F.3d 1 (1st Cir. 2021).  The scheme must involve bribery or kickbacks. *See Skilling v. United States*, 561 U.S. 358, 408. Regarding Element #3, "[B]ribery and concealing bribery are part and parcel of the same scheme*." United States v. Frega*, 179 F.3d 793, 804 (9th Cir. 1999).

Count Four also alleges every element of the offense charged.  It alleges that between December 2019 and May 2020, the defendants intended to devise a scheme to "defraud and deprive the citizens of Puerto Rico of their right to the honest services of a public official," namely, "the honest services of Vazquez, the Governor of Puerto Rico, through bribery and kickbacks" (Elements #1 and 2), "by means of material false and fraudulent pretenses, representations, and promises," and for the purpose of executing the scheme, transmitted and caused to be "transmitted by means of wire communication in interstate commerce" "a wire transfer of $40,000" (Element #4) (Indictment, p. 29).  The count incorporates by reference over one hundred factual allegations supporting to the count, including that the defendants "secretly communicated with each other directly and through intermediaries via text message, email, and internet-based messaging applications, and during in-person meetings, to discuss aspects of the agreement to pay bribes to Vazquez." (Element #3) (*Id.*, p. 10).

Count Four, like Counts One and Three, meets the First Circuit's standard of "sketch[ing] out the elements of the crime and the nature of the charge so that [Vazquez] can prepare a defense and plead double jeopardy in any future prosecution for the same offense." *Guerrier*, 669 F.3d at 3.

**B.     The Indictment Alleges a Quid Pro Quo that Meets the *McCormick* Standard for a Political Contribution-Based Bribery**

> ### 1.     *The McCormick Requirement of an Explicit Quid Pro Quo*

The Supreme Court has recognized the function of financial contributions in expressing support for candidates and fueling political debate. *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 21 (1976); *Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 296-98 (1981).  The giving of campaign contributions "implicates core First Amendment rights." *See United States v. Ring*, 706 F.3d 460, 465-66 (D.C. Cir. 2013); *see also McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 204 (2014) (characterizing campaign contributions as an exercise of one's "expressive and associational" rights under the First Amendment).  As the Court has noted, in our political system, "[m]oney is constantly being solicited on behalf of candidates, who run on platforms and who claim support on the basis of their views and what they intend to do or have done." *Id.*

But the law does not protect "those who, under the guise of requesting 'donations,' demand money in return for some act of official grace." *United States v. Dozier*, 672 F.2d 531, 537 (5th Cir. 1982).  In the context of campaign contributions, "a fine line may separate a request for support from the sale of a favor." *Id.*  "No politician who knows the identity and business interests of his campaign contributors is ever completely devoid of knowledge as to the inspiration behind the donation." *United States v. Brewster*, 506 F.2d 62, 81 (D.C. Cir. 1974).

For this reason, the Supreme Court held in *McCormick v. United States* that when a bribe comes in the form of the otherwise constitutionally protected political donation, the terms of the agreement between the briber and the public official must be explicit. 500 U.S. 257, 273 (1991).[2]

---

[2] The United States does not concede that the *McCormick* standard of an explicit quid pro quo necessarily applies in this case, for two reasons.  First, it is unclear that the First Circuit has weighed in on whether *McCormick*'s requirement for an explicit quid pro quo applies when the charges are federal program bribery and honest services wire fraud, as opposed to extortion under the Hobbs Act.  Decisions from other Circuits and districts express the same uncertainty.  *See, e.g.,  United States v. Allison*, 27 F.4th 913, 919 n.4 (3d

Recognizing that political candidates and their supporters constantly solicit money on the basis of their platforms and promises, and the risk of criminalizing this common facet of American politics, the Court held that a Hobbs Act bribery based on political contributions must entail "payments [ ] made in return for  an explicit promise or undertaking by the official to perform or not perform an official act." *Id.* at 273.

One year after *McCormick*, the Supreme Court considered contribution-based bribery again in *Evans v. United States*, 504 U.S. 255 (1991).  In *Evans*, the defendant member of the Georgia county commission accepted $7,000 in a cash and a $1,000 campaign contribution from an FBI agent posing as a real estate investor requesting assistance in a re-zoning effort. *Id.* at 256. The defendant never completed his end of the bargain because he was arrested.  *Id.*  The Court considered a jury instruction stating that "if a public official demands or accepts money in exchange for a specific requested exercise of his or her official power, such a demand or

---

Cir. 2022) (stating that the Third Circuit has yet to decide if *McCormick* applies to federal program bribery); *United States v. Pawlowski*, 351 F. Supp. 3d 840, 849 (E.D. Pa. 2018) ("[T]he parties agree [in a bribery prosecution under §666] that where the 'quid' or thing of value offered is a campaign contribution, the Government must prove a quid pro quo that is explicit – i.e., an explicit quid pro quo.") (emphasis added). Second, the justification for the protection is that political contributions are protected speech under the First Amendment. *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191-92 (2014) (referencing *McCormick*'s targeting of quid pro quos in general discussion of the court's 40-year history of "draw[ing] the constitutional line between the permissible goal of avoiding corruption in the political process and the impermissible desire simply to limit political speech."); *United States v. Siegelman*, 640 F.3d 1159, 1169-70 (11th Cir. 2011) ("It would be a particularly dangerous legal error from a civic point of view to instruct a jury that they may convict a defendant for his exercise of either of these constitutionally protected activities . . . The Supreme Court has guarded against this possibility . . ." (citing *McCormick*)); *United States v. Roberson*, 998 F.3d 1237, 1251 (11th Cir. 2021) (rejecting argument that *McCormick* applied to case, distinguishing it from cases that "involved First Amendment concerns not at issue here, namely campaign donations."). But Mr. Herrera, a foreign national, had no First Amendment right to contribute to Vazquez's campaign. *See* 52 U.S.C. § 30121 (criminalizing political contributions and donations by a foreign national).  That said, because the Indictment satisfies Fed. R. Crim. P. 7 pleading requirements under any standard, the Government asks the Court to assume that *McCormick* applies in deciding on Vazquez's Motion. The Government respectfully requests that the Court allow the Government to address the applicability of the *McCormick* at the motion *in limine* stage.

acceptance does constitute a violation of the Hobbs Act regardless of whether the payment is made in the form of a campaign contribution." *Id.* at 257-58.  The Court approved that instruction, concluding that it "satisfie[d] the quid pro quo requirement of *McCormick* because the offense is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts." *Id.* at 268.  The Court further explained that to prove the quid pro quo, "the Government need <u>only</u> show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Id.* at 268 (emphasis added).  Though prosecuted on the theory that the defendant's acceptance of the bribe constituted an <u>implicit</u> promise to use his official position to serve the interests of the bribegiver, the Court affirmed.  *See id.* at 265-66; *see also United States v. López-Martínez*, 2020 U.S. Dist. LEXIS 174251, at *109-10 (D.P.R., Sept. 21, 2020) (describing *Evans* decision).  Neither *McCormick* nor *Evans* mandates that the quid pro quo must be expressly stated, a point reinforced by Justice Kennedy's oft-quoted concurring opinion in *Evans*: "The official and the payor need not state the quid pro quo in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods."  *Id.* at 274.

### 2. *The Indictment Repeatedly Alleges An Explicit Quid Pro Quo Between Vazquez and her Co-Conspirators*

The Government is not aware of a single appellate decision requiring a specific pleading standard for a contribution-based quid pro quo,[3] and although an indictment does not require

---

[3] Neither, apparently, is Vazquez, who cites appellate decisions addressing jury instructions and sufficiency of evidence, not pleading standards, in support of her argument.  For example, Vazquez states that "the Supreme Court has <u>expressly held</u> that there is a heightened pleading standard when the thing of value representing the 'quid' is a political contribution." (Vazquez's Motion to Dismiss, p. 17 (emphasis added)), but she cites *McCormick*, which addressed jury instructions.  500 U.S. at 274 ("we hold, as *McCormick* urges, that the District Court's instruction to the same effect was error").  She also represents that "[c]ourts in this Circuit have acknowledged the application of the <u>*McCormick* pleading standard</u> in circumstances where the indictment alleges bribery in the form of campaign contributions" (*Id.*, p. 22 (emphasis added)), but cites two decisions from the First Circuit that also address jury instructions and sufficiency of evidence

"linguistic precision," *United States v. Devegter*, 198 F.3d 1324, 1330 (11th Cir. 1999), here, the Indictment's language tracks that of other indictments charging contribution-based on bribery.[4] Regardless, the Indictment <u>repeatedly</u> alleges an explicit, unambiguous quid pro quo in in Counts One, Three, and Four: political funding in exchange for a change of leadership at OCIF. The conspiracy count alleges the explicit terms of "thousands of dollars in funding in support of Vazquez's election campaign" for "the termination of OCIF Commissioner A and the appointment of OCIF Commissioner B." (Indictment, p. 9). The federal program bribery count alleges "thousands of dollars in funding in support of Vazquez's election campaign" for "the termination of Commissioner A and the appointment of OCIF Commissioner B." (*Id.*, p. 28). And Count 4 alleges Vazquez deprived the citizens of Puerto Rico their right to her honest services as a public official" through "bribes and kickbacks," while, along with Counts One and Three, incorporating

---

and one district court decision that specifically stated campaign contributions were not a fact in issue. *See United States v. Turner*, 684 F.3d 244, 246 (1st Cir. 2012) ("Turner . . . argues both (1) that the district court's jury instructions . . . constituted plain error," . . . and "(2) there was insufficient evidence to satisfy those same two elements"); *United States v. Cruzado-Laureano*, 404 F.3d 470, 473 (1st Cir. 2005) ("In this appeal, Cruzado challenges the sufficiency of the evidence supporting his counts of conviction."); *United States v. Perez-Otero*, 2023 WL 2351900, at *4 (D.P.R. Mar. 3, 2023) (where the district court found that "[a]s a threshold matter, a careful reading of the indictment against Pérez-Otero shows that the government did not charge him with soliciting, demanding, accepting or receiving a campaign contribution."). These cases do not support the propositions for which Vazquez cites them.

[4] *See, e.g., United States v. Siegleman*, 2:05-cr-00119-CDL-CSC, ECF No. 61-1 (M.D. Al., Dec. 12, 2002) (charging federal program bribery, and alleging the defendant "corruptly gave . . . a $2,500 campaign contribution . . . intending to influence and reward Clerk A in connection with any business, transaction, and series of transactions of such government involving anything of value of $5,000 or more, that is, the referral of traffic debt placements from the clerk's office to Penn Credito"); *United States v. Terry*, 1:10-cr-00390-SL, ECF No. 24 (N.D. Oh., Mar. 9, 2011) (charging honest services mail fraud, and alleging the defendant "solicit[ed] and accept[ed] gifts, payments, and other things of value from Russo and others in exchange for favorable official action, and for Russo to enrich himself and his designees by secretly obtaining favorable official action for himself and his designees through corrupt means"); *United States v. Beldini*, 2:09-cr-00637-JLL, ECF No. 40 (D.N.J., Nov. 19, 2009) (charging conspiracy to commit extortion under color of official right, and alleging the defendant "obtain[ed] corrupt cash payments, illicit political contributions and other benefits, namely real estate brokerage commissions . . . in exchange for the official assistance, action and influence of defendant Beldini and JC Official 1 in Jersey City Government matters.")

by reference the repeated allegations, through the Indictment, of the explicit terms of funding her

political campaign in exchange for the change of leadership at OCIF:

- Paragraph 30: alleging Herrera and Rossini "offer[ed] bribes in the form of things of value, specifically, funding in support of Vazquez's election campaign," "in exchange for the <u>specific acts</u> of Vazquez terminating a Commissioner of OCIF and appointing a new Commissioner of Herrera's choosing." (emphasis added)

- Paragraph 31: Herrera and Rossini gave Vazquez "payments to the International Consulting Firm, Political Consultant A, and SuperPAC 1, each of which would support Vazquez's efforts to win the 2020 gubernatorial election in Puerto Rico, in exchange for specific acts favorable to Herrera and The Bank, including Vazquez terminating OCIF Commissioner A and appointing a new Commissioner of Herrera's choosing, OCIF Commissioner B."

- Paragraph 71: referencing Vazquez meeting with intermediaries at Fortaleza "to discuss HERRERA's offer to financially support Vazquez's election campaign in exchange for Vazquez terminating OCIF Commissioner A."

- Paragraph 88: "Herrera, through intermediaries, including Blakeman, conveyed to Vazquez his willingness to create a SuperPAC to support her election campaign in exchange for her removal of OCIF Commissioner A."

- Paragraph 131: alleging Vazquez solicited "thousands of dollars in funding in support of [her] election campaign" "in connection with" "the termination of OCIF Commissioner A and the appointment OCIF Commissioner B."

The terms of the bribe alleged against Vazquez in Counts 1, 3, and 4 could not be less

unambiguous.  Even though *McCormick* itself does not call for a heightened pleading requirement,

the Indictment alleges an explicit quid pro quo.

**C.    Explicit v. Express: Courts Have Repeatedly Stated that a Contribution-Based Bribe Needs to Be Explicit, Not That It Must Be Expressly Stated**

Vazquez argues the Court must dismiss the Indictment because it does not allege a quid

pro quo was expressly stated.  This argument misstates the law. An express agreement need not

even be proven by the government, let alone alleged in the indictment.

1. *A Contribution-Based Bribe Does Not Need To Be Expressly Stated Between the Briber and the Public Official*

*McCormick* and *Evans* serve as a protection against prosecutions of politicians for simply taking political actions favorable to their supporters and donor base by requiring that the terms of an agreement be explicit and clear. It is not illegal for a politician to support legislation favored by a particular lobbyist after receiving a large contribution from a that lobbyist, or for the lobbyist to donate hoping, or even, as they jury was instructed in *McCormick*, "expect[ing] that such payment would influence . . . official conduct." 500 U.S. at 265. It is illegal for the politician and the lobbyist to explicitly condition the contribution on the support of the legislation. "Explicit, however, does not mean express." *United States v. Siegelman*, 640 F.3d 1159, 1171 (6th Cir. 2011) (explaining that "*McCormick* does not impose such a stringent standard."). "[A]n explicit arrangement need not be memorialized in a writing or spoken aloud." *United States v. Davis*, 841 Fed. Appx. 375, 379 (3d Cir. 2021) (internal quotation omitted) (unpublished).

Since *Evans*, courts have repeatedly re-affirmed an explicit quid pro quo need not be expressly stated. "Explicit" refers "not to the form of the agreement between the payor and payee, but to the degree to which the payor and payee were aware of its terms, regardless of whether those terms were articulated." *United States v. Lopez-Martinez*, 2020 WL 5629787, at *40 (D.P.R. Sept. 21, 2020) (quoting *United States v. Blandford*, 33 F.3d 685, 696 (6th Cir. 1994)), *reversed on other grounds*, 994 F.3d 1 (1st Cir. 2021). "[C]ontext may show that an otherwise legitimate contribution is a bribe." *United States v. Terry*, 707 F.3d 607, 613 (6th Cir. 2013). It is the law of this district, and every Circuit which has considered the issue, that campaign contribution-based briberies need not be expressly stated, so long as the agreement between the payor and the public official is clear and unambiguous. *See Lopez-Martinez*, 2020 WL 5629787, at *40; *United States v. Correia*, 55 F.4th 12, 24-25, 30-31 (1st Cir. 2022) (rejecting sufficiency of the evidence

challenge to campaign contributions bribery conviction based on quid pro quo formed without express statement and shown by inferences); *United States v. Allinson*, 27 F.4th 913, 925 (3d Cir.) (approving jury instruction that "[t]he explicitness requirement does not require an official's specific statement that he will exchange official action for a contribution, but rather requires that the quid pro quo be clear and unambiguous, leaving no uncertainty about the terms of the bargain."), *cert. denied*, 143 S. Ct. 427 (2022); *United States v. Blagojevich*, 794 F.3d 729, 738 (7th Cir. 2015) ("Suppose Blagojevich believed that winks and nudges avoid the *McCormick* standard. That would be legally wrong . . ."), *cert. denied*, 577 U.S. 1234 (2016); *United States v. Terry*, 707 F.3d 607, 612-13 (6th Cir. 2013) ("So long as a public official agrees that payments will influence an official act, that suffices."), *cert. denied*, 571 U.S. 1237 (2014); *United States v. Siegelman*, 640 F.3d 1159, 1171 (11th Cir. 2011) ("Since the [bribery] agreement is for some specific action or inaction, the agreement must be explicit, but there is no requirement that it be express."), *cert. denied*, 566 U.S. 1043 (2012); *United States v. Tomblin*, 46 F.3d 1369, 1381 (5th Cir. 1995) ("The explicitness requirement is satisfied so long as the terms of the quid pro quo are clear and unambiguous."); *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir.) ("This understanding need not be verbally explicit. The jury may consider both direct and circumstantial evidence . . . As we read *McCormick*, the explicitness requirement is satisfied so long as the terms of the quid pro quo are clear and unambiguous."), *cert. denied*, 506 U.S. 919 (1992).

    *McCormick* never defines how such quid pro quo understandings must be reached.  It never mandates that they must be expressly stated or limits the manner in which criminal intent can be proven to just spoken words.  In other words, the lobbyist and the politician are guilty of bribery if the lobbyist expressly states, "I'll pay you to vote for Bill XYZ," and the politician responds, "Deal."  But they are also culpable in the much more realistic scenario where a lobbyist obliquely

states to the politician's chief of staff, "I'd love to donate to that SuperPAC benefitting your boss, but I need a vote for Bill XYZ," followed by the politician voting for the legislation the next day – even in the absence of an expressly stated agreement – as long as they understand one is in exchange for the other.   The politician and the lobbyist may contend that was not their intent, but as the Court stated in *McCormick*, "matters of intent are for a jury to consider."  500 U.S. at 270. To require that the terms of a bribe must be formally worded between two parties ignores the reality of the coded and minimally-stated manner in which criminal agreements are often reached. As one appellate court noted, [f]ew politicians say, on or off the record, 'I will exchange official act X for payment Y.'"  *Blagojevich*, 794 F.3d at 738; *see also United States v. Inzunza*, 638 F.3d 1006, 1014 (9th Cir. 2011) ("An official may be convicted without evidence equivalent to a statement such as: 'Thank you for the $10,000 campaign contribution. In return for it, I promise to introduce your bill tomorrow.'")

Two decisions, one from the First Circuit and one from this district, illustrate how a contribution-based bribery agreement can be explicit without being stated expressly stated by the defendant.

In *United States v. Correia*, a jury convicted the defendant-mayor of violating the Hobbs Act based on his acceptance of a $25,000 campaign contribution in exchange for two documents the bribe payor needed in order to open a marijuana business.  *Id.* at 24-25.  An intermediary to the defendant worked out the arrangement with the bribe payor.  *Id.*  Despite the fact that the defendant's only words exchanged with the briber were confirming that he had "talked with [the intermediary] and we're good," to which the briber responded, "we're good," and that the bribes terms were never expressly stated to the defendant, the First Circuit affirmed the conviction.  *Id.* at 24-25 and 31.  Citing *McCormick*, the Court stated that "it was well within the jury's province

both to infer the existence of an <u>explicit</u> quid pro quo between [the briber] and the defendant, and to <u>infer</u> that [the intermediary] conspired with the defendant to arrange that quid pro quo." *Id.* at 31 (emphasis added; internal citations omitted).

In *United States v. Lopez-Martinez*, the Government prosecuted a wire fraud conspiracy on "a theory of campaign contributions given in exchange for contracts." 2020 WL 5629787, at *39 (D.P.R. Sept. 21, 2020). Denying a motion for acquittal, the court listed evidence it found demonstrated "that the contracts . . . stood on an explicit quid pro quo relation with campaign donations," none of which included an express statement by the defendant that he would give contracts for contributions. *See id.* at 42.

### 2. *Vazquez's Motion Misstates the Law on Contribution-Based Bribery*

Though Vazquez's Motion cites *McCormick* nearly 80 times, it is *Evans*, decided one year after *McCormick*, that clarifies that explicit doesn't mean express. At the outset, Vazquez's motion to dismiss incorrectly describes *Evans* "as a Supreme Court case which followed *McCormick* and involved an allegation of bribes that were not campaign contributions." (Vazquez's Motion to Dismiss, p. 21 n. 7). This is incorrect. The payments at issue in *Evans* included "cash totaling $ 7,000 and a check, payable to petitioner's campaign, for $ 1,000." *Evans*, 504 U.S. at 257. The jury instruction that *Evans* approved specifically referenced a campaign contribution: "[I]f a public official demands or accepts money in exchange for a specific requested exercise of his or her official power, such a demand or acceptance does constitute a violation of the Hobbs Act regardless of whether the payment is made in the form of a campaign contribution." *Id.* at 257-58. The *Evans* Court concluded that the bribe, never expressly stated, satisfied the quid pro quo requirement of *McCormick* because "the offense is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts." *Id.* at 268. The law requires

nothing more.   Vazquez's Motion repeatedly specifies what she believes to be requisites for a quid pro quo (*see, e.g.,* Vazquez's Motion to Dismiss, p. 34 ("there is no allegation that Vazquez-Garced sought assurances that she would receive campaign contributions"), but "motives and consequences, not formalities, are the keys for determining whether a public official entered an agreement to accept a bribe . . ." *Terry*, 707 F.3d at 613 (internal quotations omitted).

But even *McCormick* alone does not support the proposition that a quid quo pro must be express.   *McCormick* redressed the trial court's error in instructing that the jury could convict without any finding of a quid pro quo <u>at all</u>.   *See McCormick*, 500 U.S. at 274 ("We thus disagree with the Court of Appeals' holding in this case that a quid pro quo is not necessary for conviction . . . . By the same token, we hold . . . that the District Court's instruction to the same effect was error.").   Holding that the public official's conduct must "be controlled by the terms of the promise or undertaking," *McCormick* dictates that that there must be a clear and unambiguous understanding of the terms of the bribe, <u>not</u>, as Vazquez argues, the manner in which it must be formed.   *See, e.g., Correia*, 55 F.4th at 31 (citing *McCormick* and affirming contribution-based bribery conviction where terms were not expressly stated between the defendant and the briber).

Not only does the *McCormick* decision lack any mandate on how an explicit quid pro quo must be formed, it endorsed a Fifth Circuit decision which affirmed convictions without an expressly stated quid pro quo.   *See McCormick*, 500 U.S. at 273.   In *United States v. Dozier*, the Fifth Circuit affirmed a conviction where the "<u>implication</u> was clear" from the circumstances surrounding the bribe, even though the defendant had "denied . . . that he was 'putting a fee' on his help." *Dozier*, 672 F.2d at 538.   In other words, even if there was evidence Vazquez expressly stated <u>disinterest</u> in Herrera's and Rossini's assistance, under *McCormick*, the Government would be entitled to prove to the jury that her express statements were feigned, and the parties

unambiguously understood what was expected in exchange for Herrera's contribution. *McCormick* endorsed *Dozier*[5], consistent with *McCormick*'s admonition that intent is a question for the jury.  *See McCormick*, 500 U.S. at 270.

The district court cases[6] cited by Vazquez to support her argument that "courts have applied *McCormick*'s explicit quid pro quo requirement at the motion to dismiss stage" demonstrate the opposite: that an expressly stated quid pro quo need not even be proven at trial, much less alleged in an indictment.  (Vazquez' Motion to Dismiss, pp. 25 and 29).  In *United States v. Pawlowski* – a decision addressing a motion for acquittal, not a motion to dismiss – the district court explained that "[w]hile the quid pro quo must be explicit, it need not be express" and that the terms need not be "in writing or spoken out loud."  In denying the motion for acquittal, the district court specifically noted that the evidence supported the jury's verdict "despite no overt conversation between [the defendant] and [the briber] outlining the terms of the agreement." 351 F. Supp. 840, 850, 856 (E.D. Pa., Nov. 20, 2018).  Vazquez also cites *United States v. Menendez*, which states

---

[5] In fact, before the Supreme Court even decided *Evans*, one court relied on *McCormick* in rejecting an argument "that the explicitness requirement cannot be met unless an official has specifically stated that he will exchange official action for a contribution."  *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir.), *cert. denied*, 506 U.S. 919 (1992).  The Ninth Circuit held that "[t]his understanding need not be verbally explicit. The jury may consider both direct and circumstantial evidence . . . As we read *McCormick*, the explicitness requirement is satisfied so long as the terms of the quid pro quo are clear and unambiguous." *Id.*; *see also Blagojevich*, 794 F.3d at 738 (without referencing *Evans*, explaining that jury instructions allowing conviction in a campaign contribution bribery case based on a quid pro quo accomplished through, "Nudge, nudge, wink, wink, you know what I mean," "track[ed] *McCormick*").  Additionally, *McCormick* quotes with approval the following guidance from a Department of Justice manual: "Campaign contributions will not be authorized as the subject of a Hobbs Act prosecution unless they can be proven to have been given in return for the performance of or abstaining from an official act; otherwise, any campaign contribution might constitute a violation."  500 at 273.  This guidance said nothing about how the exchange must be proven, much less that it must be expressly stated.

[6] The only appellate court decision Vazquez cites in support of this proposition, *United States v. Allen*, addressed an appeal of a conviction for aiding and abetting an illegal gambling business, not a motion to dismiss a bribery charge.  10 F.3d 405, 411-12 (7th Cir. 1993) ("Allen was not convicted of bribery, or of the RICO charge for which bribery supplied the predicate offenses . . . Therefore, Allen was not harmed by the district court's refusal to give his proposed *McCormick* instruction.").

that "[e]xplicit, as explained in *Evans*, speaks not to the form of the agreement between the payor and payee, but to the degree to which the payor and payee were aware of its terms, regardless of whether those terms were articulated." 132 F. Supp. 3d 635, 641 (D.N.J., Sept. 28, 2015) (citing *Blandford*, 33 F.3d at 696)).[7]  The district court in *Menendez* dismissed four counts which only alleged unspecified official acts "as opportunities arose," *id.* at 644, whereas those against Vazquez don't allege a non-specific action to be taken when the opportunity presents itself, but rather, the replacement of OCIF's Commissioner.  And Vazquez cites *United States v. Donagher*, a district court decision dismissing three counts for failing to allege an explicit quid pro quo.  520 F. Supp. 3d 1034, 1045-46 (N.D. Ill., Feb. 19, 2021).  But unlike the charges against Vazquez, the *Donagher* indictment alleged only that the defendants made payments "for the purpose of seeking favorable treatment," without specifying what the "favorable treatment" would be.  *Id.* at 1045.  And in a different context, *Donagher* actually uses the word "expressly" in a manner demonstrating that something can be inferred without being expressly stated.  *Id.* at 1043 (in finding that federal program bribery requires proof of a quid pro quo, noting "although the government is correct that the text of § 666(a)(2) does not <u>expressly</u> require a quid pro quo, this is not determinative." (emphasis added)).  *Donagher* also cites decisions which specifically held that that the quid pro

---

[7] *Menendez* also refutes the suggestion in her Motion (*see, e.g.*, Vazquez's Motion, pp. 3, 13) that the quid pro quo had to personally benefit Vazquez, as does First Circuit precedent and the statute's black letter. *See id.*, 132 F. Supp. 3d at 640 (holding that 18 U.S.C. § 201's "anything of value" can apply "even for another person"); 18 U.S.C. 666(a)(1)(B) (specifying public official needs to only solicit "for the benefit of <u>any person</u>" "anything of value" (emphasis added)); *United States v. Dwyer*, 238 Fed. Appx. 631, 644 n.4 (1st Cir. 2007) (unpublished) ("Dwyer argues that she did not 'benefit in any way from any alleged wrongdoing at MCDI.' That may be true, but section 666 criminalizes conversion to the use of 'any other person."). And *Menendez* refutes Vazquez's suggestion that a quid pro quo could not be consummated if the SuperPAC was never funded. *See id.* at *643 (noting that "the government need not establish that the alleged quid pro quo was actually fulfilled" (citing *Evans*, 504 U.S. at 268)); *see also Lopez-Martinez*, 2020 U.S. Dist Lexis 174251, at *34 ("A payor completes the crimes of honest-services and federal-funds bribery as soon as he offers payment in exchange for official action, 'even if the intended recipient does nothing or immediately turns him in to law enforcement.'" (quoting *United States v. Suhl*, 885 F.3d 1106, 1113 (8th Cir. 2018)).

quo need not be expressly stated.  *Id.* at 1045 (citing *Blandford*, 33 F.3d at 696; *Carpenter*, 961 F.2d at 827).

The authority Vazquez cites that most closely supports her argument that a bribe must be expressly stated is *United States v. Benjamin*, 2022 WL 17417038 (S.D.N.Y., Dec. 5, 2022), a district court decision currently being appealed.  *Benjamin* dismissed counts that it deemed implicitly, and therefore, insufficiently, alleged, based on its reading of Second Circuit law.  *See generally, id.*  But in so doing, the court incorrectly portrayed *McCormick* and *Evans* as articulating two different standards, *id.* at *10, which *Evans* itself refuted when it held that the jury instruction at issue "satisfie[d] the quid pro quo requirement of *McCormick v. United States*." 504 U.S. at 268 (internal quotation omitted).  Moreover, *Benjamin* acknowledged that "the Second Circuit has not decided a bribery case that was actually based on campaign contributions," *id.* at *13, but looked past Second Circuit precedent making clear that an "agreement or understanding element of bribery . . . may be proven by circumstantial evidence" because "bribes are seldom accompanied by written contracts, receipts or public declarations of intentions." *United States v. Friedman*, 854 F.2d 535, 553 (2d. Cir. 1988).  And contrary to Vazquez's argument, even *Benjamin* notes that "it does not necessarily follow, however, that a quid pro quo agreement must be 'stated' or 'transcribed' in order to be 'explicit.'" *Id.* at 11 (providing, as an example, a bribery consummated by the briber tacitly acknowledging a quid pro quo with a smile and a handshake).  Whether or not *Benjamín* even supports Vazquez's argument, it is an outlier and contrary to First Circuit law.  And if the Second Circuit affirms *Benjamin*, it will be the only Circuit to require anything more than explicit terms in a contribution-based quid pro quo.

Without controlling authority to support her position, Vazquez makes reference to legal dictionary definitions of express and explicit to try to support her argument.   This Court need not

refer to legal dictionaries, because thirty years of case law has settled the issue.  But even the dictionary distinction between "explicit" and "express" supports the Government's position, not Vazquez's.  Vazquez notes that the 2019 edition of Black's Law Dictionary defines "explicit" as "[c]lear, open, direct, or exact" or "[e]xpressed without ambiguity or vagueness; leaving no doubt," and "express" as "[c]learly and unmistakably communicated; stated with directness and clarity." (Vazquez's Motion to Dismiss, p. 26).   Precisely.  Explicit means "clear" and "exact," while express means "stated" or "communicated."  This undercuts Vazquez's argument that only formal wording can establish mutual understanding between Herrera, Rossini, and Vazquez.  And if the Court were to rely on Black's Law, it should reference the operative definitions when *McCormick* was decided, which even further undercuts Vazquez's argument.  *See* Black's Law Dictionary 579, 580 (6th ed. 1990) (defining "explicit" as "not obscure or ambiguous, having no disguised meaning or reservation," or "clear in understanding," and "express" as "declared in terms; set forth in words and not left to inference.") (emphasis added).

### 3.  *Vazquez's Argument Contravenes a Basic Tenet of Criminal Law: Evidence Can Be Circumstantial.*

Not only does Vazquez misstate the law on contribution-based bribery, her argument that intent to engage in bribery can only be proven with an express statement is irreconcilable with the long-standing legal principle that criminal conduct can be proven with direct or circumstantial evidence.  *See, e.g., Holland v. United States*, 348 U.S. 121, 140 (1954) (holding circumstantial evidence proving guilt beyond a reasonable doubt is sufficient to convict); *United States v. Woodward*, 149 F.3d 46, 57 (1st Cir. 1998) ("The jury was entitled to infer [the defendant's] intent from the circumstances surrounding his actions, from indirect, as opposed to direct, evidence.") (internal quotations omitted); *United States v. Taylor*, 54 F.3d 967, 975 (1st Cir. 1995) (noting that a showing of criminal intent "may be made wholly on the basis of circumstantial evidence.").

Even if Vazquez had correctly addressed this as a matter for jury instructions, and not as a basis for a motion to dismiss, her argument directly contradicts the First Circuit's Pattern Jury Instructions.  *See* Pattern Jury Instructions for the First Circuit, Instruction 3.05 (updated June 14, 2002) (describing "circumstantial evidence" as proof of facts "from which you could draw the inference, by reason and common sense, that another fact exists, even though it has not been proven directly.").

Vazquez has not, and cannot, cite to a single case that holds circumstantial evidence cannot be relied upon in cases of bribery.  That juries may rely on circumstantial evidence is "is especially true in cases involving governmental officials or political leaders, whose affairs tend more than most to be subjected to public scrutiny." *Friedman*, 854 F.2d at 553 (holding that a jury "can infer guilt from evidence of benefits received and subsequent favorable treatment, as well as from behavior indicating consciousness of guilt."); *see also Tomblin*, 46 F.3d at 1381 (in affirming sufficiency of evidence in contribution-based bribery case, noting "we consider both  direct and circumstantial evidence"); *United States v. Allinson*, 27 F.4th 913, 919 (3d Cir. 2022) ("But a jury could find from the conversations and conduct detailed above that *Allinson* agreed to contribute, did contribute, and caused other firm attorneys to contribute to Pawlowski's campaign, with the specific intent of obtaining the Parking Authority contract."); *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 968 (4th Cir. 2019) (noting that because bribery cases often lack "a smoking gun," "it is critical . . .  that inferences from circumstantial evidence about intent and motives about which reasonable minds could differ be sorted out by the jury.").[8]

---

[8] The First Circuit has also held that conspirators can reach a meeting of the minds without verbalizing their agreement to engage in criminal conduct.  *See, e.g., United States v. Maryea*, 704 F.3d 55, 76 (1st Cir. 2013) (observing that a tacit understanding between conspirators can support a conviction).

**D.      The Indictment <u>Does</u> Allege that the Quid Pro Quo Was Expressly Communicated to Vazquez.**

The Government does not need to prove the quid pro quo must be expressly stated, much less allege it.  But even if Vazquez were right on the law, she is wrong on the facts, because the Indictment <u>does</u> allege the quid pro quo was expressly stated to her, including that:

- "Herrera, Rossini, Vazquez, and their co-conspirators secretly communicated with each other directly and through intermediaries via text message, email, and internet-based messaging applications, and during in-person meetings, to discuss aspects of the agreement to pay bribes to Vazquez" (Indictment, ¶ 33);

- "HERRERA and ROSSINI used Diaz, Blakeman, and others as intermediaries of VAZQUEZ and members of her administration.  VAZQUEZ and members of her administration, in turn, used Diaz, Blakeman, and others as messengers to HERRERA, ROSSINI, and their co-conspirators" (*Id.*, ¶ 34) and "In and around February 2020, VAZQUEZ, Blakeman, Individual A, Individual B, and others met at Fortaleza to discuss HERRERA's offer to financially support VAZQUEZ's election campaign in exchange for VAZQUEZ terminating OCIF Commissioner A" (*Id.*, ¶ 71).

Moreover, throughout the Indictment, there are multiple examples of the quid pro quo being expressly communicated through intermediaries of Herrera and Vazquez, which is circumstantial evidence that it was also communicated to her. Vazquez's Motion repeatedly argues that because she wasn't a party to certain text message exchanges, a quid pro quo cannot be reached.[9]  But neither *McCormick* nor *Evans*, nor any other case, has said that a quid pro quo between two actors cannot be reached through intermediaries.  In fact, courts have held just the opposite.  In *Correia*, for example, the First Circuit specifically affirmed that an explicit quid pro

---

[9] *See, e.g.*, Vazquez's Motion, p. 33 ("none of these communications can be attributed to her"); p. 31 ("notably absent from this narrative is any allegation that Governor Vazquez-Garced and Herrera even spoke to one another during the event, much less that they mutually and knowingly entered into an explicit quid pro quo agreement"); p. 32 ("[T]he indictment does not allege any conversation between Blakeman and Herrera or Blakeman and Governor Vazquez-Garced where she agreed that her official conduct will be controlled by the terms of Herrera's promise or undertaking." (internal quotation and brackets omitted)); see also p. 6 (stating that the Supreme Court prohibits an inference that she received the quid pro quo based on text messages among her co-conspirators); p. 9 (stating that indictment does not allege that Vazquez was "involved in, or even remotely aware of, these communications").

quo could be inferred between the defendant and briber, even though it had been arranged between the briber and an intermediary.  *See Correia*, 55 F.4th at 31.   This makes sense, because it is often the case with bribery, as with other crimes, that principles utilize intermediaries specifically to shield themselves from detection. *Blagojevich*, 794 F.3d at 734 ("Blagojevich (through intermediaries) replied that he would approve an extra $8 to $10 million of reimbursement in exchange for a 'campaign contribution' of $50,000."); *Allison*, 27 F.4th at 918-19 (affirming contribution-based § 666 count where bribe communicated through intermediaries cooperating with FBI); *cf. Terry*, 707 F.3d at 610-11, 615-16 ("[W]hen the elected official directly or through his campaign money collector…acts as the donor's 'marionette,' a jury can reject legitimate explanations for a contribution and infer that it flowed from a bribery agreement.").  If this Court accepts Vazquez's argument, it would immunize the savvy bad actors who carefully obscure their criminal activity.

**E.    Vazquez's Contrary Interpretations of the Evidence Are a Matter for the Jury.**

Finally, Vazquez offers numerous contrary interpretations of the facts in her Motion (*see, e.g.*, p. 13-14 "the Indictment fails to similarly assert that Commissioner B was the only candidate being considered by Governor Vazquez-Garced").  But none of those arguments are a basis for dismissing an indictment.  *See McCormick,* 500 U.S. at 270 ("It goes without saying that matters of intent are for the jury to consider.").  A motion to dismiss must "attack the facial validity of the indictment" and "not merely challenge[] the government's substantive case," *United States v. Berk*, 652 F.3d 132, 138 (1st Cir. 2011), and "[c]ontrary assertions of fact by the defendant will not be considered." *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).[10]

---

[10] In fact, in at least one case, the First Circuit has found the question of whether money is or is not a political contribution, itself, to be a question for the jury.  *See United States v. Cruzado-Laureano*, 404 F.3d 470, 482 (1st Cir. 2005) (rejecting argument that *McCormick* applied because "[a] reasonable jury could have found beyond a reasonable doubt that, despite the past discussion between the mayor and Dr. Gonzalez

The Court needs no further proof that the Indictment is properly pled "to apprise [Vazquez] of the charged offense" than the factual arguments her Motion offers in response.  Vazquez fully understands what she's been charged with. Vazquez can challenge the sufficiency of the evidence, but she must do so at trial.

### III.    HERRERA'S AND ROSSINI'S MOTIONS FOR JOINDER

The United States also responds to Herrera's and Rossini's Motions for Joinder to Vazquez's Motion to Dismiss, filed yesterday.  (ECF Nos. 198 and 199).

Herrera supplements Vazquez's legal argument by citing two recently decided cases.  First, Herrera cites *Percoco v. United States*. 598 U.S. ----, 2023 WL 3356527 (2023).  *Percoco* has nothing to do with pleading standard for alleging a quid pro quo.  Rather, *Percoco* addressed whether a private citizen has sufficient influence over government decision-making to be convicted of wire fraud on the basis that he deprived the public of its "intangible right of honest services." *Id.* at *2 (2023).   Percoco had served as a governor's executive deputy secretary and was paid a bribe of $35,000 during his break from public service.  *Id.* at *3.  The trial court instructed the jury that it could find Percoco had a duty to provide honest services if he had "dominated and controlled any government business" and if people working in the government actually "relied on him because of his special relationship with the government." *Id.* at *4.  Here, Herrera and Rossini are not charged in Count Four with honest services wire fraud on the theory that they accepted a bribe and, as private citizens, had a duty to provide the public with honest services.  Rather, they are charged as bribe payors, on the theory that the bribe payments caused Vazquez to deprive the public of <u>her</u> honest services.   *Percoco* is completely inapposite.

Second, Herrera cites *United States v. Abdelaziz*, a recent First Circuit decision vacating a

---

of a political contribution . . . he could deposit the check in his own private bank account").

conviction where the bribe money went directly to the private college whose duty of honest services the defendant betrayed. 2023 U.S. App. LEXIS 11507, at *48, *57 (1st Cir. 2023) (holding the case law "do[es] not support the conclusion that payments to the purportedly betrayed party constitute 'bribes' as that term is traditionally understood").   OCIF is not a private entity, and the Government has not alleged that Herrera's payments went to OCIF. *Abdelaziz* is also completely inapposite.

Finally, Herrera offers his own factual disagreements with the Indictment, which, as noted above, he must raise with the jury.

Herrera asks to "reserve[ ] the right" to file an independent motion to dismiss Counts Five, Six, and Seven (Herrera's Motion for Joinder, p. 5), and Rossini asks the same for Count Two (Rossini's Motion for Joinder, p. 2).  If they do file motions to dismiss, they should be denied if based on the argument that the quid pro quos were not sufficiently pleaded, for all the reasons stated above.[11]

## IV.    CONCLUSION

The law is clear: the Government does not even need to prove an expressly stated quid pro quo at trial, much less allege one in the Indictment.  The Indictment properly pleads criminal offenses in all of its counts, and it adequately apprises the Defendants of their charged offenses. There is no basis in law to dismiss the Indictment, especially since a motion to dismiss cannot be used to evaluate the sufficiency of the evidence. Vazquez's Motion to Dismiss should be denied.

---

[11] Both Vazquez and Herrera make mention of the Government being required to prove an "official act." (Vazquez's Motion, p. 17; Herrera's Motion, p. 2).  The United States disputes this. *See United States v. Seng*, 934 F.3d 110, 130 (2d. Cir. 2019) ("[W]e reject Ng's *McDonnell* challenge because (1) § 201(a)(3)'s definition of 'official act,' which informs the *McDonnell* standard, does not delimit the quid pro quo elements of § 666 and FCPA bribery.").  The United States respectfully requests to address this issue at the appropriate time.

**Certificate of Service**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will notify all counsel of record.

**RESPECTFULLY SUBMITTED**, this 17th day of May, 2023.

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S Department of Justice

*/s/ Ryan R. Crosswell*
Ryan R. Crosswell (G03502)
Nicholas W. Cannon
Trial Attorneys
Department of Justice
Public Integrity Section
1301 New York Ave., NW - 10th Floor
Washington, D.C. 20530
(202) 616-5699
ryan.r.crosswell@usdoj.gov