THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>V.<br><br>WANDA VAZQUEZ GARCED,<br>Defendant. | CRIMINAL NO. 22-cr-0342-01 (RAM) |

**REPLY TO GOVERNMENT'S *RESPONSE TO DEFENDANT WANDA VAZQUEZ'S MOTION TO DISMISS***

**TO THE HONORABLE COURT**:

COMES NOW defendant WANDA VAZQUEZ GARCED ("Vazquez-Garced"), by and through her attorneys, and most respectfully STATES, ALLEGES and PRAYS:

In its *Response* (D. 201) the Government alleges that it pleaded an explicit *quid pro quo* in the Indictment – political funding in exchange for a change in leadership at the Office of the Commissioner for Financial Institutions ("OCIF"). The Government indeed alleged an explicit *quid* ("promise of political funding") and an explicit *quo* (change in OCIF leadership"), but not an explicit *pro*. Therein lies the rub.[1]

We are not – as the Government contends – arguing that the government failed to provide proper notice of the charged offenses, challenging (for purposes of our Motion to Dismiss) the factual allegations in the Indictment, or relying on facts outside the Indictment. Our argument is that the Indictment's failure to allege an explicit *quid pro quo* is fatal, given that it is a required

---

[1] If that feature – an exact exchange between a specific quid and a specific quo – is all that is necessary to make a *quid pro quo* "explicit," then the Supreme Court in *McCormick* would have affirmed the conviction rather than reversing.

element of the offense under *McCormick*[2] and it must be clearly pleaded in the Indictment.

*McCormick* and *Evans*[3] present two different definitions of *quid pro quo*: A *quid pro quo* under *McCormick* must involve a payment made in return for an "explicit promise or undertaking." A *quid pro quo* under *Evans* can be proven inferentially, based on the implication that an official has knowingly accepted a payment to compensate him for an official act.

Rather than follow the law of this Circuit, the government tries to explain away the law. The lynchpin of its effort to do so is a flawed interpretation of *Evans v. United States*, 504 U.S. 255 (1992), which is directly at odds with the First, Second and Ninth Circuit's interpretation.

In United States v. Turner, 684 F.3d 244, 253 n.4 (1st Cir. 2012) the First Circuit stated:

> The Supreme Court in *McCormick v. United States,* 500 U.S. 257, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991), held that a public official's acceptance of payments that are treated as campaign contributions is a violation of the Hobbs Act "only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act." *Id.* at 273, 111 S.Ct. 1807. That is, "a specific *quid pro quo* is necessary for conviction under the Hobbs Act when an official receives a political contribution." (citation omitted.)

The First Circuit went on to note that "[o]utside of the campaign contribution context, the Supreme Court set the requirement in [*Evans*], that "the Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Id.* at 253.

The Government heavily relies on Justice Kennedy's "oft-quoted" concurring opinion in

---

[2] 500 U.S. 257 (1991).
[3] 504 U.S. 255 (1992).

*Evans* to argue that "[n]either McCormick nor Evans mandates that the quid pro quo be expressly stated." Most respectfully, the government misunderstands Justice Kennedy. The First Circuit explained that Justice Kennedy is referring to the non-campaign standard in its "oft-quoted" opinion – it therefore supports Vazquez-Garced's position – not the Government's.

> The *Evans* Court did not directly state that proof of at least an *implicit,* as opposed to an explicit, quid pro quo or reciprocity understanding is necessary. However, both Justice Kennedy in a concurrence and three other justices in a dissent recognized that the *Evans* majority's opinion pointed toward such a requirement. *See id.* at 272, (Kennedy, J., concurring); *id.* at 285–86, (Thomas, J., dissenting). *Turner*, 684 F.3d at 253.

Unlike the Government's explanation, Justice Kennedy's concurring opinion stands for the proposition that in *non*-campaign cases the *quid pro quo* may be implicit. See also: *United States v. Kincaid-Chauncey,* 556 F.3d 923, 936-37 (9th Cir. 2009) ("it is well established that to convict a public official of Hobbs Act extortion for receipt of property *other than campaign contributions*, '[t]he official and the payor need not state the *quid pro quo* in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods.'" (citing *Evans*, 504 U.S. at 274) (Kennedy, J., concurring) (italics added).

Likewise, since *United States v. Ganim*, 510 F.3d 134 (2d Cir. 2007) and as recently as 2020, the Second Circuit has cited and relied upon the holding that *Evans* applies only in non-campaign contribution cases, and that McCormick requires an "express" *quid pro quo*. In *United States v. Rosen*, the court noted "[o]utside the unique context of campaign contributions [citing *McCormick*] we have not, in the context of bribery cases, required proof of an express promise regarding the specific official acts to be undertaken as part of the exchange." 716 F.3d 691, 701 (2nd Cir. 2013). In ruling against the defendant, the court held that it "decline[d] [his] invitation to

expand *McCormick* by requiring proof of an express promise in this [non-campaign contribution] case." *Id.* In *United States v. Silver*, the court found again that in *Evans* the Supreme Court had "modified [*McCormick's* 'explicit promise'] standard in non-campaign contribution cases." 948 F.3d 538, 548 (2d Cir. 2020) (alteration in original).

In fact, the prosecution's current position directly contradicts the government's recognition in *Rosen* and *Silver* that that *McCormick* requires proof of an express *quid pro quo* in campaign contribution cases, and that *Evans* only applies in non-campaign contribution cases. In *Rosen*, the government agreed that in campaign contribution cases the government must prove an "express" *quid pro quo* agreement, contrasting it with the "implied" agreement applicable in other cases. Government's Brief, *United States v. Rosen*, No. 12-2249, 2012 WL 3900585, at 30 (2d Cir. Aug. 31, 2012) ("Additionally, since 1993, this Court has rejected the notion that, *outside the campaign finance context*, the Government must prove an express, rather than implied, quid pro quo agreement.") (italics added). In *Silver*, the government described *Evans* as "the seminal case framing the *quid pro quo* requirement in *the non-campaign-contribution context.*" Government's Brief, *United States v. Silver*, No. 18-2380, 2018 WL 6039487 at 34 (2d Cir. Nov. 14, 2018) (italics added).

In its effort to escape the law in the First Circuit as stated in *Turner*, which echoes the Second and Ninth Circuits, the government cites certain out-of-circuit authorities for the proposition that while the *quid pro quo* needs to be "explicit," it need not be express. Although the government does not acknowledge it in its *Response*, the cases it cited did not in fact involve campaign contributions, or also involved personal benefits – thus taking them outside the scope of *McCormick*. Moreover, while some of these cases define "explicit" differently from the First and

Second Circuit, they recognize that the term requires much more than the kind of generalities and supposition relied on by the government in this case. They require, at a minimum, a clear *agreement* – the critical "pro" in a corrupt *quid pro quo*.

For example, the government cites *United States v. Blandford* for the proposition that "[e]xplicit refers 'not to the form of the agreement between the payor and payee, but to the degree to which the payor and payee were aware of its terms, regardless of whether those terms were articulated." 33 F.3d 685, 696 (6th Cir. 1994) (*Response*, p. 15).[4] The government omits to mention that *Blandford* was not a campaign contribution case at all; it involved cash bribes, and the court recognized that "no campaign contributions had in fact been made." *Id. at 698*.

Other cases cited by the government involved personal payments which take them outside the ambit of *McCormick*. The government relies heavily on *United States v. Correia*, 55 F.4th 12 (1st Cir. 2022) and argues that this is the controlling precedent in this case – entirely omitting *Turner* in its discussion. In *Correia* the defendant was the mayor of the city of Fall River and charged $250,000 each to three aspiring marijuana vendors to allow them to open marijuana shops in the city. *Correia*, 55 F.4th at 21-23. Unlike the government's characterization in its *Response* that *Correia* was a "campaign contribution bribery" case, it was nothing of the sort. Instead, it involved a city mayor that personally charged $250,000 to allow marijuana shops to operate within the city – cash bribes taking the case outside the scope of *McCormick*.

---

[4] *Blandford* recognized that its analysis of *McCormick* and *Evans* differed from the Second Circuit's interpretation, citing *Garcia* as among the decisions concluding that *Evans* "established a modified or relaxed *quid pro quo* standard to be applied in non-campaign contribution cases," while "the comparatively strict standard of *McCormick* still would govern when the alleged Hobbs Act violation arises out of the receipt of campaign contributions by a public official." *Blandford*, 33F. 3d at 695 (citing *United States v. Garcia*, 992 F.2d 409, 414 (2d Cir. 1993).

Likewise, *United States v. Allinson*, 27 F.4th 913 (3d Cir. 2022) does not support the government's position. There the Third Circuit affirmed the district court's denial of a new trial based on an alleged misstatement of law in the government's closing remarks. *Id.* at 925. The Third Circuit ruled that the government's closing remarks "was not improper when considered in context…" *Id.* Instead, the court found that Allison's own remarks were "sufficient to show that he engaged in an explicit *quid pro quo*." *Id.* at 920. ("*The money comes from me. The golden goose come to me*" - amongst many other remarks. *Id.* at 918.) The Government also failed to cite *United States v. Antico*, 275 F.3d 245 (3d Cir. 2001). In *Antico*, the "relevant inquiry is whether the District Court's instruction satisfied the implicit *quid pro quo* requirement where non-campaign contribution Hobbs Act 'color of official right' extortion is charged." *Id.* at 258. But, "an explicit *quid pro quo* is necessary for conviction under the Hobbs Act when a public official receives a campaign contribution." *Antico*, at 256. (overruled on other grounds by *United States v. Riley*, 621 F.3d 312 (3d Cir. 2010).)

A case cited by the Government involving only campaign contributions also required far more than what the Indictment alleges here. In *United States v. Siegelman*, 640 F.3d 1159, 1171 (11th Cir. 2011) the court interpreted "explicit" to require that "the acceptance of the campaign donation be in return for a *specific* official action" (italics in the original) and recognized that the law "require[s] more for conviction than merely proof of a campaign donation followed by an act favorable toward the donor." *Id.* at 1170.

It is extraordinary that even now the Government cannot identify *when* Mr. Herrera Velutini is alleged to have reached an explicit *quid pro quo* with Vazquez-Garced. This is more significant than what it might appear at first impression. *McCormick* holds that an elected official's

acceptance of campaign contributions is sanctionable "only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act. In such situations the official *asserts* that his official conduct *will be controlled* by the terms of the promise or undertaking." 500 U.S. at 273 (Italics added). The second sentence is key to understanding the contours of the *McCormick* rule: (1) the explicit agreement must precede the official conduct and (2) the public official must "assert" that his future conduct will be controlled by the terms of the promise. Thus, any official action performed by Vazquez-Garced prior to the "explicit agreement" cannot be prosecuted. Furthermore, Vazquez-Garced must "assert" her acceptance (the *"pro"*) to the illegal *quid pro quo*. Her acceptance may not be inferred.)

Let's put the Government's legal theory to the test. Imagine the following scenario:

- Public Official A has been in office for various terms. She is facing a strong challenge from a better financed opponent and is rapidly losing ground in the polls. Lobbyist B meets with Public Official A to advocate for legislation that would benefit his clients. He tells Public Official A that his clients have formed a SuperPac to spend huge amounts of money to promote and campaign in favor of candidates that will support the legislation. Public Official A listens to the lobbyist but remains quiet and does not commit herself. However, Public Official A believes that supporting the proposed legislation is a good one and in the best interests of her constituents.

- According to the government, "[e]xplicit' refers 'not to the form of the agreement between the payor and the payee, but to the degree to which the payor and the payee were aware of

*Reply*

-8-

its terms, regardless of whether those terms were articulated."[5] "[C]ampaign contribution-based briberies need to be expressly stated, so long as the agreement between the payor and the public official is clear and unambiguous." *Id.*

- Under the government's theory there's a clear *quid* (campaign support from the lobbyist) and a clear *quo* (Public Official A's support for the legislation). And, both parties are clear that the SuperPac's support will be contingent on Public Official A's support. What is Public Official A to do? If she supports the legislation that she already favors and believes benefits her constituents, she could be subject to prosecution under the government's interpretation of *McCormick*. The only way Public Official A can shield herself from prosecution is to vote *against* legislation that she nevertheless believes is in her constituent's best interests.

- Since the government argues that the explicit agreement need not be stated and can be proven implicitly, the government could very well prosecute (and convict) Public Official A if she votes in favor of the legislation.

- This is exactly the Supreme Court's concern in *McCormick*. The government is now promoting what the Supreme Court prohibits – the absurdity of Public Official A's dilemma.

It gets worse. The Government further argues that an "express agreement need not even be proven by the government, let alone alleged in the indictment."[6] "In other words, even if there is evidence [Public Official A] expressly stated <u>disinterest</u> in [Lobbyist B's] assistance, under *McCormick*, the

---

[5] *Response*, p. 12.
[6] *Response*, p. 11.

Reply

Government would be entitled to prove to the jury that her express statements were feigned, and the parties unambiguously understood what was expected in exchange for [Lobbyist's] contribution."[7] (Underline in the original.) In other words, a bribery and honest services prosecution would no longer be dependent on whether or not there is an explicit agreement, it would only depend on the prosecution's subjective *inference* from the facts of the case – irrespective of the public official's conduct.

The Government's claim that it may subjectively *infer* a crime under these circumstances is directly at odds with *McCormick*. Getting back to our example; a public official would only be safe from prosecutions if he or she does the opposite of what a lobbyist requests.

The logic the Supreme Court employed in *McCormick* follows the fine line between what is legal campaign activity and the "forbidden zone of conduct."

> [T]o hold that legislators commit the federal crime of extortion when they act for the benefit of constituents or support legislation furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries, is an unrealistic assessment of what Congress could have meant by making it a crime to obtain property from another, with his consent, "under color of official right." To hold otherwise would open to prosecution not only conduct that has long been thought to be well within the law but also conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures, as they have been from the beginning of the Nation. **It would require statutory language more explicit than the Hobbs Act contains to justify a contrary conclusion**. *Id.* at 272-73. (emphasis added).

---

[7] *Response*, p. 17.

*Reply*

-10-

The Supreme Court has made clear that principles of due process require "fair warning … in language that the common world will understand" as to what conduct is prohibited by law. *McBoyle v. United States*, 283 U.S. 25, 27 (1931) (Holmes, J.) There are "three manifestations of the fair warning requirement": the vagueness doctrine; the rule of lenity; and, pertinent here, the principle that due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267.

There is confusion among the courts about what McCormick's "explicit" standard means. We are not aware of any case in which the First or Second Circuit has decided a bribery case that was actually based on campaign contributions. Although both have repeatedly stated that a *quid pro quo* in this context must be "explicit" or "express," neither has further explained what that standard means. At a minimum, the governing precedents were not clear enough to give Vazquez-Garced "fair notice of what behavior [was] criminal," *Sash v. Zenk*, 428 F.3d 132, 134 (2d Cir. 2005) (Sotomayor, J.), at the time she acted. [8] To impose, or even charge, criminal liability in the First Circuit where the conduct did not clearly involve an "explicit" *quid pro quo* would create a significant fair-warning problem. This consideration weighs heavily in favor of a stricter

---

[8] "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them"…"[h]ere, I can make no more than a guess as to what Congress intended Section 666 to mean. " *United States v. Fernandez*, 722 F.3d 1, 40 (1st Cir. 2013) (Howard, J. concurring).

*Reply*

-11-

interpretation of the "explicit" *quid pro quo* requirement.

In the end, we have an idea of what acts do not rise to the level of bribery and honest services fraud (*i.e.,* facts in *McCormick*[9]), but we still have no idea when they do.

As noted in our *Motion to Dismiss*, the government was required not just to track the language of each relevant statute, but also to explicitly allege any implicit element of each statute. Here, the bribery statute (18 U.S.C. §666) and honest services wire fraud statute (18 U.S.C. §§1343 and 1346) do not contain any requirement to show an explicit *quid pro quo* agreement. But an explicit *quid pro quo* is an "implicit element" of each statutory offense charged here, given that through *McCormick* and its First and Second Circuit progeny, the "courts have added a significant refinement"[10] in how these statutes may be interpreted against public officials facing prosecution over campaign fundraising.

If the government must prove the existence of an explicit or express promise to sustain a conviction, then it constitutes an essential element of the offense that must be alleged in the indictment. Otherwise, there is no assurance that the grand jury considered that essential element.[11]

---

[9] Whatever an "explicit" *quid pro quo* might be, it must be more explicit than the exchange in *McCormick* – in which the Court reversed the conviction for lack of a sufficiently "explicit" *quid prop quo*.

[10] *See:* WAYNE LAFAVE *et al.*, 5 CRIM. PROC. § 19.3(b) (4th ed.) (2021) ("If courts have added a significant refinement in the interpretation of a particular statutory element, that element often must be pleaded as interpreted rather than as stated in the statutory language, especially if the judicial interpretation substantially limits the scope of the statutory language.")

[11] The Fifth Amendment guarantees that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . .." If the indictment does not state the essential elements of the crime, the defendant cannot be assured that

*Reply*

-12-

We agree with the Government that an indictment need not divulge the bulk of its evidence. But the Court may consider whether the facts, as alleged on the face of the indictment, satisfy the statutory definition of a crime. *United States v. Aleynikov*, 676 F.3d 71, 76-82 (2d Cir. 2012). In its *Response* the Government tries to overcome its insufficient allegations by narrating what they *intend* to prove at trial and that they may do so using circumstantial evidence. First, Vazquez-Garced is challenging the sufficiency of the indictment – not what the Government thinks it may introduce at trial. Second, we did not raise any argument regarding how the Government may prove its case. Thus, the Government's forceful assertions in the last pages of its *Response* are irrelevant and need not be addressed here.[12]

Finally, we urge the Court to conduct an *in-camera* review of the grand jury instructions. Our request is based on the likelihood that the grand jury was (through no wrongdoing by the government) misinstructed that it could return an indictment without the need for an explicit *quid pro quo*. *See*: *United States v. Bravo-Fernández*, 239 F. Supp. 3d 411 (D.P.R. 2017) (Besosa, J.). If, as we suspect, the grand jury was not instructed to find an explicit *quid pro quo* then the indictment must be dismissed.

---

he is being tried on the evidence presented to the grand jury. *Russell v. United States*, 369 U.S. 749, 770 (1962).

[12] Although the Government contends that the First Amendment concerns raised in our *Motion to Dismiss* are not applicable to Herrera if he is, as the Government notes, a foreign national, any such concerns would – regardless – still be squarely applicable to Vazquez-Garced. Simply put, her First Amendment protections are not contingent upon her knowledge of Herrera's purported immigration status. *See*: 52 U.S.C. § 30121(b)(2) (foreign nationals who are permanent residents of the United States are not prohibited from making political donations).

*Reply*

-13-

WHEREFORE, Defendant respectfully prays from this Honorable Court to GRANT this motion and, accordingly, dismiss Counts One, Three and Four of the Indictment.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, June 5, 2023.

**s/ Ignacio Fernández de Lahongrais**
IGNACIO FERNANDEZ DE LAHONGRAIS
USDC - PR 211603
255 Avenida Ponce de León, Suite 1210
MCS Plaza
San Juan, Puerto Rico 00918-1475
Tel. 787-923-5789
ignacio@bufetefernandezalcaraz.com

**s/ Luis A. Plaza-Mariota**
Luis A. Plaza-Mariota
USDC - PR 124806
Luis A. Plaza Law Offices
P.O. Box 362122
San Juan, PR  00936-2122
Tel: (787) 764-0310
plaza@luisplazalaw.com

**s/ Peter John Porrata**
PETER JOHN PORRATA
USDC – PR 128901
POB 3943
Guaynabo, PR 00969-3943
Tel.  407-953-9888
peterjohnporrata@gmail.com

*Attorneys for Wanda Vazquez Garced*

*Reply*

-14-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this same date, the undersigned attorney filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for all parties in this action.

In San Juan, Puerto Rico, June 5, 2023.

**s/ Ignacio Fernández de Lahongrais**
IGNACIO FERNANDEZ DE LAHONGRAIS
USDC - PR 211603
255 Avenida Ponce de León, Suite 1210
MCS Plaza
San Juan, Puerto Rico 00918-1475
Tel. 787-923-5789
ignacio@bufetefernandezalcaraz.com