## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 3:22-cr-00342-SCC** |
| | : | |
| | : | RECEIVED AND FILED |
| **v.** | : | |
| | : | |
| **Wanda Vazquez Garced,** | | CLERK'S OFFICE USDC PR |
| **Julio Martin Herrera Velutini,** | : | |
| **Mark T Rossini** | | OGJ '24 ENE 24 PM 4:18 |
| | | |
| **Defendants** | : | |

### MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF UNSEALING PROCEEDINGS

Transparency International UK ("TI-UK") and the Organized Crime and Corruption Reporting Project ("the OCCRP") respectfully moves this Court for permission to intervene for the limited purpose of seeking an order to unseal certain documents filed in this case (as specified below), and to provide public access to all future documents, with the exception of those documents that would pose unacceptable national security risks.

As of now, the electronic documents in this docket related to Bancrédito's and the Office of the Commissioner of Financial Institutions of Puerto Rico's (OCIF) participation in court are restricted under the level of "selected parties". This is also the case in several documents regarding the change of venue petition by Mr Herrera Velutini.

By making this application, we are relying on the First Amendment right of access to court information. As related in our accompanying Memorandum of Law, the Court has accepted all sealing requests as of the drafting of this submission, leaving the public with no access to a large portion of the pre-trial proceedings and no proper explanation for this lack of access.

Should there be any national security considerations for sealing the documents, there is a methodology that both accommodates the First Amendment right of access and safeguards information that would compromise national security. We ask the Court to order the parties to redact any portions that risk compromising national security and make all other information available to the public.

The First Amendment entrusts the public with a qualified right of access to judicial proceedings and records, *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-10 (1986) (*Press Enterprise II*), and that right of access is particularly important here as this case presents a unique opportunity for Puerto Rican and American voters to understand how their own political elections were at risk of corrupt interference. Moreover, the public deserves to understand the involvement of an international bank investigated for money laundering and interference in high-level Puerto Rican politics, as it raises wider questions about the use of international banks to compromise transparency and democracy.

For the reasons stated in the accompanying memorandum in support of this motion we ask the Court to unseal or redact all entries related to Bancrédito's participation in court (namely Documents #227, #235, #252, #253, #256, #265, #270, #284, #285, #286, #289, #367, #370, #371, #398, #399, #400, #401) and all entries relating to the Office of the Commissioner of Financial Institutions Puerto Rico participation (documents #231 #244 #246 #275 and #336). We also request this Court to unseal the restricted documents linked to motions to dismiss #193 and #224 (Specifically documents #262 #301 #340 and all its exhibits).   Furthermore, the government response to the OMNIBUS ORDER in 406 should be made public as there is no explanation in the docket of why this document has been presented under seal.

We also request the unsealing of any other related documents already submitted or to be submitted in the case, and any other filings that do not implicate national security. In the alternative, should this Court decline to grant the relief sought, we ask the Court to make findings on the record explaining its decision so that we may have an appealable Order. We further request that the Court consider this request as an ongoing one and conduct future proceedings in a manner that allows the public access to an open Court so as to comport with the public's First Amendment right of access.

Respectfully submitted,

Steve Goodrich,
Transparency International UK

*and*

Daniel Balint-Kurti,
Organized Crime and Corruption Reporting Project (OCCRP)

Address for correspondence:
Transparency International UK
10 Queen Street Place,
London EC4R 1AG
United Kingdom
Tel: +44 203 096 7676
Email: press@transparency.org.uk

January 12, 2024

# EXHIBIT A

**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

| UNITED STATES OF AMERICA | : | **No. 3:22-cr-00342-SCC-GLS All Defendants** |
|---|---|---|
| | : | |
| | : | |
| v. | : | |
| | : | |
| **Wanda Vazquez Garced,** | | |
| **Julio Martin Herrera Velutini,** | : | |
| **Mark T Rossini** | | |
| | | |
| **Defendant** | : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF UNSEALING PROCEEDINGS

Transparency International UK ("TI-UK") and the Organized Crime and Corruption Reporting Project ("OCCRP") submit this memorandum of law in support of their motion to intervene for the limited purpose of unsealing proceedings of the pre-trial hearings in this case. To accommodate the public's right of access guaranteed under the First Amendment to the Constitution of the United States, the Court should order the parties to undertake review of the proceedings and redact those portions that are likely to impact concerns of national security. Those matters that do not impact such serious concerns should be made available to the public. The role of the media is of great importance to help the public understand a case that involves the possible abuse of the system by their own political representatives and individuals tied to a banking entity in their jurisdiction.

## BACKGROUND

Julio M. Herrera Velutini is the owner of Bancrédito ("The Bank"), an international bank located in Puerto Rico since 2009 under Puerto Rico's International Banking Center Regulatory Act of 1989. His bank became the subject of an examination by the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF") in 2019. OCIF's assessment on or around September 18, 2020 found that The Bank had conducted dozens of suspicious financial transactions without filing Suspicious Activity Reports (SARs). As the indictment notes, financial institutions are required under The Bank Secrecy Act to file SARs with the Financial Crimes Enforcement Network of the U.S. Department of Treasury ("FinCEN"), to help prevent money-laundering or other abuses of the U.S. financial system. Several of the transactions highlighted by OCIF were linked to bank accounts and entities owned by Mr Herrera Velutini. (*Indictment para. 25*)

The United States Department of Justice indicted Mr Herrera Velutini, former FBI agent Mark Rossini and former Governor of Puerto Rico Wanda Vazquez Garced for an alleged bribery scheme. According to the indictment, "along with his co-conspirators, [Mr Herrera Velutini] sought to interfere with the functions of both OCIF and the Financial Crimes Enforcement Network of the U.S. Department of Treasury (FinCEN) by paying bribes to public officials they believed had the power to intervene on The Bank's behalf". (*Indictment, para. 4*)

The prosecution argues that Mr Herrera Velutini, Mr Rossini and others conspired to pay "thousands of dollars to then-Governor Vazquez Garced, through payments to third parties that would support Vazquez's election, with the intent of influencing her to remove a Commissioner of OCIF and replace him with an individual hand-picked by Herrera". *(Indictment, para. 4)*

In a separate allegation against Mr Herrera Velutini, the prosecution claims that he and others conspired to pay thousands of dollars to a second public official in the executive branch of the government of Puerto Rico through payments to a close associate that would support the public official's election. All of this, with the intent of influencing the public official to end OCIF's examination of The Bank and to allow The Bank to avoid its obligation to report suspicious activity to FinCEN. *(Indictment, para. 4)*

In August 2022, Mr Herrera Velutini, Ms Vazquez Garced and Mr Rossini were indicted (Document #3) and the motion practice commenced. Since then, all defendants have introduced motions to dismiss counts One, Two, Three and Four (Documents # 193, #199). Mr Herrera Velutini separately presented a motion to dismiss counts Five, Six and Seven in document #224. These motions have not yet been ruled on.

The Bank made its first appearance in court on July 5, 2023 (Document #225) and the OCIF's first appearance in court was on July 7, 2023 (Document #229). All documents relating to their submissions or court appearances have been sealed with no explanation as to why details of their involvement should not be made public.

The Court has already ordered that "restricted filings are the exception, not the norm" (*OMNIBUS ORDER*, document #389). "The parties shall comply with the District of Puerto Rico's rules regarding sealing, including Standing Order No. 9, and refrain from unnecessarily sealing documents that should be viewable to the public." Standing Order No. 9 prays that the inadequate use of restriction may cause damage to third parties "such as the press" and that "procedures in federal courts are characteristically public in nature".

Furthermore, according to Standing Order No. 9, motions to restrict "shall be open to public inspection and shall identify the restriction level sought, address the interest to be

protected, and indicate why such interest outweighs the presumption of public access" (Standing

Order No. 9). However, Transparency International UK and OCCRP have noticed that most

motions to restrict by the parties have not included all the required elements. One example is

document #252 and the subsequent motions to restrict by Bancrédito, which fail to explain the

"interest to be protected" and to "indicate why such interest outweighs the presumption of public

access". These motions only refer to "the reason expressed at footnote one of the motion" which

is inaccessible by non-related parties. This leaves the public with no access to the content of the

motion and no context as to why it has been restricted.

　　　Transparency International UK (https://www.transparency.org.uk/) is a non-profit

organization in the United Kingdom that combats corruption by raising awareness and

advocating for reform. It researches and publishes on issues related to corruption and money

laundering, and acts "as a leading center of anti-corruption expertise in the UK." The Organized

Crime and Corruption Reporting Project (OCCRP) is a global network of investigative

journalists headquartered in Amsterdam, publishing its articles online (at www.occrp.org). Its

articles cover matters related to corruption and organized crime internationally, including in

relation to the banking sector - see, for example, our projects "The Dictator's Bank"

(https://www.occrp.org/en/the-dictators-bank/) and "The Troika Laundromat"

(https://www.occrp.org/en/troikalaundromat/).

　　　For examples of media coverage, helping to illustrate the degree to which the public is

taking a legitimate public interest in this case, see:

　　　5th August 2022: "Tory donor charged in Puerto Rico bribery scheme" (Financial Times)

　　　31st August 2022: "Banker in bribe scandal pleads not guilty in Puerto Rico" (Associated

Press)

31st August 2022: "Banker at Center of Puerto Rico Corruption Scandal Denies Guilt"

(Bloomberg)

The articles are appended to this submission.

## ARGUMENT

### A. This Court Should Unseal Documents Allowing the Public to Properly Understand the Issues and the Conduct of the Case

The First Amendment entrusts the public with a qualified right of access to criminal trials and pre-trial proceedings. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-10 (1986) (*Press Enterprise II*). This right "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Id.* at 13 (quoting *Press-Enterprise Co. v. Superior* Court, 464 U.S. 501, 508 (1984) (*Press-Enterprise I*)).

Two inquiries determine whether the public's right of access requires disclosure of judicial proceedings and records. First, courts must determine whether the particular proceeding at issue "has historically been open to the press and general public" and "whether public access plays a significant positive role in the function of the particular process in question." (*Press-Enterprise II*, 478 U.S. at 8-9). If the proceeding meets both prongs of this test, the public's right of access attaches. *Id.* Courts must then disclose the disputed record or proceeding unless there is an "overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 10 (quoting *Press-Enterprise I*, 464 U.S. at 510). If a court finds that such an interest exists, the court must make findings on the record "specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* (quoting *Press-Enterprise I*, 464 U.S. at 510). Even when the public's right of access does not attach, courts should explain their decisions in writing. *See, e.g., Dhiab v.*

*Trump*, 852 F.3d 1087, 1091-96 (D.C. Cir. 2017). Written explanations are appropriate in such circumstances because "[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification." *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (quoting *Hicklin Eng'g L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006)).

There is no indication from the public record why the public's constitutional right of access should not be accommodated. *See, e.g.*, *id.* at 290, 296, 370 and 418 as of Bancrédito and document # 242 as of the OCIF. As this Court is aware, the judiciary should be especially skeptical of requests by coordinate branches of the government to seal judicial proceedings, "lest ignorance of the basis for the decision cause the public to doubt that complete independence of the courts of justice [which] is peculiarly essential in a limited Constitution." *Id.* at 83 (quoting The Federalist No. 78 (Alexander Hamilton)) (alteration in original) (internal quotation marks omitted). Even in cases involving the gravest national security threats, the First Amendment "protects the people's right to know that their government acts fairly, lawfully, and accurately." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002).

In the current case, this Court should enforce the public's First Amendment right of access to all pre-trial proceedings to the greatest extent possible without compromising national security information.

The label affixed to a pre-trial status conference is not dispositive of the public's right of access. *See Smith*, 787 F.2d at 115-16. Rather, the Constitution requires this Court to determine whether the public's right of access attaches to any of these proceedings and to either unseal the relevant documents or to make findings on the record explaining why disclosure is inappropriate. *See Press-Enterprise II*, 478 U.S. at 8-10.

Moreover, the government's investigation of Ms Garced Vazquez, Mr Herrera Velutini and Mr Rossini has received national media attention, and multiple aspects of the case support public disclosure. First, the case is truly unique in that it allows the public in Puerto Rico, and the U.S. more widely, to understand how their political and banking system might have been abused. Second, the investigation involves anti-money laundering and anti-corruption efforts, an area of government conduct in which public oversight serves as an important check. As a result, this case is of particular interest to the public. Finally, as the Supreme Court has recognized, there is a therapeutic value of public criminal proceedings – "when a shocking crime occurs, a community reaction of outrage . . . follows, and thereafter the open processes of justice serve an important prophylactic purpose, providing an outlet for community concern." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 556 (1980).

For the above reasons, this Court should unseal all proceedings involving documents that allow the public to properly understand the issues and the conduct of the case. In the alternative, if this Court refuses to unseal the proceedings, the Court should make findings on the record explaining its decision. The Court should also unseal any future proceedings to which the public's First Amendment right of access applies.

## B. Intervention in a Criminal Case Is an Appropriate Vehicle for Asserting the Public's Right of Access

Although the Federal Rules of Criminal Procedure do not expressly provide for motions to intervene, intervention is appropriate for asserting the public's First Amendment right of access. *Aref*, 533 F.3d at 81. As the Supreme Court has explained, federal courts may "formulate procedural rules not specifically required by the Constitution or the Congress." *United States v. Hasting*, 461 U.S. 499, 505 (1983). "Because vindication of [the] right [of public access] requires some meaningful opportunity for protest by persons other than the initial litigants . . . a

motion to intervene to assert the public First Amendment right of access to criminal proceedings is proper." *Aref*, 533 F.3d at 81 (alteration in original) (citations omitted) (internal quotation marks omitted).

The Supreme Court has held that the press and the public's right of access to judicial proceedings in criminal cases is a matter of presumption. "[A] presumption of openness inheres in the very nature of a criminal trial under our system of justice." *Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 573 (1980)*. The First Circuit has concluded that the public's right of access extends "to documents and kindred materials submitted in connection with the prosecution and defense of criminal proceedings." *Re Providence Journal Co., 293 F.3d 1 (1st Cir. 2002)*.

Federal courts "generally have permitted limited intervention by the media for the purpose of pursuing access to court proceedings." *United States v. Abdelaziz, 2021 WL 4295840 (D. Mass. 2021)*; see also *United States v. Blagojevich, 612 F.3d 558, 559 (7th Cir. 2010)*.

Should the Court grant movant's request, the unsealing of these documents would play a "significant positive role" in serving the public's right to a "full understanding" of criminal proceedings. *Re Boston Herald, Inc., 321 F.3d 174, 182 (1st Cir. 2003) and In re Providence Journal Co., Id.*

## CONCLUSION

For all of the above reasons, this Court should enforce the public's First Amendment right of access and unseal all proceedings in this case, with particular regard to those specifically enumerated in this motion. If redactions are necessary, as much of the proceedings should be unsealed as possible without compromising national security information. In the alternative, if

—

the Court refuses to unseal the proceedings, the Court should make findings on the record
explaining its decision. The Court should also unseal documents relating to any future
proceedings to which the public's First Amendment right of access applies.

Respectfully submitted,

Steve Goodrich,
Transparency International UK

*and*

Daniel Balint-Kurti,
Organized Crime and Corruption Reporting Project (OCCRP)

Address for correspondence:
Transparency International UK
10 Queen Street Place,
London EC4R 1AG
United Kingdom
Tel: +44 203 096 7676
Email: press@transparency.org.uk

January 12, 2024