IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>[1] WANDA VÁZQUEZ GARCED,<br>[2] JULIO M. HERRERA VELUTINI,<br>[3] MARK T. ROSSINI,<br>Defendants. | CRIMINAL NO. 22-342 (SCC) |

**THE UNITED STATES' REPLY IN SUPPORT OF A MOTION FOR PROTECTIVE ORDER PURSUANT TO SECTION 3 OF THE CLASSIFIED INFORMATION PROCEDURES ACT (ECF NO. 583)**

The United States of America files this Reply in Support of a Motion for Protective Order Pursuant to Section 3 of the Classified Information Procedures Act ("CIPA"), and states as follows:

**A. The Government's Proposed Order was Based on the Request of Defendants Herrera and Rossini**

Defendant Julio Herrera's Response in Opposition to the Government's Motion for a CIPA protective order states that, "[t]his Court should deny the Government's motion because no Protective Order is required at this time." ECF No. 587, p. 14. The Government drafted a protective order at the specific request of Mr. Herrera and Mr. Rossini. The request for a CIPA Section 3 Protective Order was specifically raised by counsel for Mr. Herrera at a meeting with Government counsel on January 31, 2024, as confirmed by Mr. Herrera's counsel in a letter sent to the Government on February 29, 2024 and again in an email sent to the Government on March 4, 2024. *See* Exhibit 1 (reading, in part, "[t]he defense further expressly sought the government's agreement to begin working on a CIPA section 3 protective order that would impose the personnel, information, and physical security requirements relevant for the information the defense had just orally briefed."). Counsel for Mr. Rossini also requested a CIPA Section 3 protective order on

March 1, 2024. The Government's understanding was that counsel for Mr. Herrera wanted a CIPA Section 3 order in place in order for him to file a CIPA-related motions. Mr. Herrera has repeated his intention to file a motion to compel discovery related to CIPA issues, *see* ECF No. 587, that will contain potentially classified information. Accordingly, the Government believes a Protective Order is necessary for Mr. Herrera to file such motion.

### B. The Court's Authority to Issue Protective Order

Mr. Herrera argues that the Court does not have the authority to issue the proposed protective order because the information known to Mr. Herrera was not provided by the government in this case.[1] *See* ECF No. 587, p. 3. Relying almost exclusively on *United States v. Pappas*, 94 F.3d 795 (2d. Cir. 1996), Mr. Herrera asserts that "CIPA § 3, however, expressly limits the protective order to classified information 'disclosed by the United States to any defendant in any criminal case.'" ECF No. 587, p. 4, *quoting Pappas*, 94 F.3d at 798. But Mr. Herrera misreads the Second Circuit's decision in *Pappas*. To be sure, the court in *Pappas* distinguished between classified information produced to the defense in discovery and classified information known to the defendant prior to prosecution. *See Pappas*, 94 F.3d at 801. And, as the *Pappas* court explained, while a CIPA protective order may broadly prohibit any public disclosure of the former, such orders serve a more limited function with request to the latter: "information acquired by the defendant prior to the criminal prosecution may be prohibited from disclosure only 'in connection with the trial' and not outside the trial." *Id.* Contrary to Mr. Herrera's claim, then, it is error to assert that CIPA "does not provide a court authority to issue a protective order over all classified information that may be known to a defendant or the defense in a criminal case." ECF No. 587, p. 3. In fact, *Pappas* holds just the opposite.

---

[1] Mr. Herrera later plainly acknowledges that the Court does have inherent authority when he requests that the Court issue his proposed Order in lieu of the Government's.

2

As the court in *Pappas* makes clear, the Court may enter a CIPA protective order where, as here, the classified information is known to the defendant prior to prosecution. Such a protective order may prohibit disclosures of such classified information "in connection with the trial." And that is precisely what the Government's proposed order seeks to do: the order would put in place a clear set of procedures to securely and efficiently enable the defendants to prepare any pretrial filings that they believe are likely to implicate classified information. *See* ECF No. 583-1 at ¶¶ 13-20; *see also United States v. Chalmers*, No. S5-05-cr-59, 2007 WL 591948 (S.D.N.Y. Feb. 27, 2007) ("To the extent that [the defendant] seeks to introduce at trial any classified information he obtained outside this case, in accordance with *Pappas* and the intent of Congress . . . [the defendant] must comply with CIPA, and this court can, and will, regulate 'what may be introduced in the trial context.'").

Even assuming, *arguendo*, that CIPA Section 3 does not authorize the Court to enter the requested protective order (a position we reject), the Court should enter the order pursuant to Federal Rule of Criminal Procedure 16(d)(1), which provides that the the Court "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." For the reasons set forth herein—namely, the serious national security risk presented by the public disclosure of classified information, the fact that at least two defendants intend to prepare and submit classified filings in this matter, and that the protective order creates the framework for enabling that to occur—good cause supports the Government's Motion. *See United States v. Kotey*, 545 F. Supp. 3d 331, 336 (E.D. Va. 2021) (explaining that CIPA "confirms the district court's power under Rule 16(d)(1) 'to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national security.'").

Critically, however, the fact that the CIPA protective order has a more limited scope with

respect to classified information acquired by the defendant prior to prosecution does not mean that the defense is free to use such information as they see fit. Rather, such uses remain subject to and constrained by federal criminal law, including, in particular, the provisions of the Espionage Act, set forth at 18 U.S.C. § 793 *et seq.*, as well as related statutes. In fact, nearly all conceivable uses of classified information outside the bounds of the CIPA protective order—for example, the deliberate sharing of classified information to persons without the requisite clearances and/or the handling of classified information in unsecure locations or on unsecure devices—may create criminal liability. Additionally, all other legal or contractual obligations that the defendant may have assumed to ensure confidentiality of this information likewise continued to apply. *United States v. Oakley*, 2008 WL 4559810, at *3 (E.D. Tenn. Oct. 8, 2008) ("If the defendant is under any other legal or contractual obligations to ensure the confidentiality of the information at issue, those obligations still bind him.").

Thus, while Mr. Herrera is correct that the Government has thus far not shared classified material that was not already known to him, it is unclear how he proposes to litigate a motion to compel classified information without a Protective Order in place or how the Government could disclose confidential information should he prevail on his motion. Accordingly, the proposed protective order is both lawful and prudent. In fact, it is necessary, as it is the only way to enable Mr. Herrera and the other defendants to securely prepare and file with the court motions and briefs that contain classified information.

### C. Secure Area in the District of Puerto Rico

Mr. Herrera also objects to the secured location contemplated by the protective order being in Puerto Rico. It is standard practice for the secured location to be in the district in which the prosecution takes place and Mr. Herrera has made no showing why his case is extraordinary in any

respect. Considering that all CIPA litigation will take place in Puerto Rico, it is non-sensical to have a secured location located outside of the district, particularly given that neither of Mr. Herrera's counsel of record are located in Washington, D.C. Moreover, the secure location is meant to be used by any defendant that wishes to prepare CIPA related filings.[2]

### D. Conclusion

To avoid any further delay in having this issue resolved, the Government will be prepared to address the above issues at the status hearing scheduled for August 7, 2024.

### Certificate of Service

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will notify all counsel of record.

**RESPECTFULLY SUBMITTED**, this 19th day of July, 2024.

    COREY R. AMUNDSON
    Chief, Public Integrity Section
    U.S Department of Justice

    */s/ Ryan R. Crosswell*
    Ryan R. Crosswell (G03502)
    Nicholas W. Cannon
    Trial Attorneys
    Department of Justice
    Public Integrity Section
    1301 New York Ave., NW - 10th Floor
    Washington, D.C. 20530
    (202) 616-5699
    ryan.r.crosswell@usdoj.gov

---

[2] The Government also opposes the remainder of Mr. Herrera's proposed line edits because (1) they are mere statements of general objection regarding the scope of Section 3 Order and (2) they deviate from the Department of Justice's standing protective order without sufficient justification.